## ARROWSMITH *v.* GLEASON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 133. Argued December 18, 1888. — Decided January 14, 1889.

In the State of Ohio one freehold surety to a guardian's bond for the faithful discharge of his duties is sufficient, if he has enough property to make the bond required by the statute good.

*Arrowsmith* v. *Harmening*, 42 Ohio St. 259, followed as to the validity of the sales attacked in these proceedings.

A guardian's bond executed by a surety upon condition that another surety should be obtained is valid against third parties, in a collateral proceeding, although no such surety was obtained.

The other conditions of jurisdiction being satisfied, a Circuit Court of the United States has jurisdiction in equity to set aside a sale of an infant's

lands, fraudulently made by his guardian, under authority derived from a Probate Court, and may give such relief therein as is consistent with equity.

THE case was stated by the court as follows:

This suit involves the title to certain lands inherited by the plaintiff, and sold some years ago by his statutory guardian, the defendant Gleason, under authority conferred by proceedings instituted by him in the Probate Court of Defiance County, in the State of Ohio. The plaintiff attacks the order of sale as invalid, prays that the deeds executed to the purchaser be declared void, that an accounting in respect to rents and profits be had, and that such other relief be granted as may be proper. The court below sustained demurrers to the bill, and dismissed the suit. We are, therefore, to inquire, upon this appeal, whether the bill discloses a cause of action entitling the appellant to relief in a court of equity.

The case made by the bill is substantially as follows: The lands in controversy formerly belonged to John C. Arrowsmith, who died in 1869; his wife, and the plaintiff, his only child and heir-at-law, surviving him. On the 15th of July, 1869, Gleason petitioned said Probate Court to be appointed guardian of the estate of the plaintiff, then but six years of age. He applied to one Henry Hardy, a freeholder, to become surety upon his bond as guardian, in the penalty of $5000, which Hardy did, upon the express agreement that, before the bond was delivered, Gleason would procure another surety of equal responsibility. Gleason filed the bond in the Probate Court, without obtaining the signature of an additional surety. The bond contained no condition except that if Gleason "shall faithfully discharge all his duties as guardian, then the above obligation is to be void; otherwise, to remain in full force." Upon its being filed, an order was made appointing Gleason guardian of the plaintiff's estate, and letters of guardianship were issued to him.

On the 22d of July, 1869, Gleason filed a petition in the Probate Court of Defiance County, representing that no personal estate of the ward had ever come to his possession or

knowledge, and that there was no such estate dependent upon the settlement of the father's estate, or upon the execution of any trust; that his ward was the owner of the fee simple of certain tracts of lands in Defiance County. one being section thirty-six in that county, containing 640 acres, less a small strip containing $6\frac{25}{100}$ acres used and occupied by the Wabash, St. Louis and Pacific Railroad Company as way-ground, and others, aggregating 400 acres; and, in addition, a tract of about seven acres in Paulding County; that the ward was, also, the owner of the fee simple, by virtue of tax titles, of certain other described tracts of lands in Defiance County, aggregating nearly one thousand acres, all of which, the petition alleged, were wild lands, yielding no income; that he had received no rents whatever from any of the ward's real estate; that its sale was necessary for the maintenance and education of the ward, who was indebted for boarding and lodging in the sum of $210; that there were no liens upon it, to his knowledge, and that the widow had a dower interest in said lands. The prayer of the petition was that the infant and widow be made defendants; that dower be set off to the latter; that the guardian be ordered to sell the real estate for the purposes above set forth; and that petitioner have such other relief as was proper. The court ordered notice to be served upon the widow and infant of the hearing of the petition on the 10th day of August, 1869. Personal notice was given to the former, and the latter was notified by a written copy being left at the residence of his mother.

The widow filed an answer in the Probate Court, waiving a formal assignment of dower by metes and bounds, and asking such sum out of the proceeds of sale in lieu of dower, as was just and reasonable.

On the 10th of August, 1869, the cause was heard, the Probate Court deciding that the real estate named therein should be sold. Thereupon appraisers were appointed to report its fair cash value. On the 17th of August, 1869, the Probate Court, without having taken any bond from the guardian, except the one above referred to, which was conditioned simply for the faithful discharge of his duties, made

this order: "It is, therefore, ordered by the court that the same [the report] be, and it is hereby, approved and confirmed; and the said Edward H. Gleason having upon his appointment as such guardian given bond with reference to the value and sale of the said real estate of his said ward, which bond is now adjudged to be sufficient for the purposes hereof, therefore, the giving of additional bond is hereby dispensed with." And on the 10th day of November, 1869, the following order of sale was entered in said cause: "Said guardian is ordered to proceed to sell said lands, or any parcel thereof, at private sale, but at not less than the appraised value thereof, and upon the following terms: One-third cash in hand on the day of sale, one-third in one year, and one-third in two years, with interest, payable annually, and the deferred payments to be secured by mortgage on the premises sold."

Within a few days after this order was made, Gleason reported to the Probate Court that he had sold to John Frederick Harmening, at private sale, and for the sum of $1537.50, "that being the full amount of the appraised value thereof," the southeast quarter of said section thirty-six, excluding the small strip occupied by the railway company. The sale was approved, and the guardian directed to make a conveyance to the purchaser, reserving for the widow, in lieu of dower, the sum of $400 out of the proceeds.

The bill charges that on the 15th of February, 1873, more than three years after the said order of sale was entered, and without any new or further appraisement of plaintiff's lands, though their value, as he was informed, had greatly advanced, and without any additional bond having been executed, Gleason, "for the purpose of getting money into his hands for his own private gain, and without reference to the true interest of his ward," and "willing to allow the said Harmening to get at a low and under-price the lands" of the plaintiff, and "though there was no necessity whatever for said sale, as he, the said Gleason, and the said Harmening well knew," sold to the latter at private sale, for the sum of $872.10, the east half of the southwest quarter of section thirty-six in Defiance County, containing eighty acres, and the

tract of $7\frac{21}{100}$ acres in Paulding County; which sale, being reported to the Probate Court, was by it wrongfully approved and a deed directed to be made and was made to the purchaser, the sum of $200 being reserved out of the proceeds, pursuant to the order of the court, for the dower interest of the widow.

The plaintiff also alleges that notwithstanding there was no necessity for any further sale or sacrifice of his estate of inheritance, Gleason, on the 4th day of December, 1874, although having in his hands, unexpended, large sums derived from the sale of the above premises, as well as considerable sums received from the release of tax titles, all of which was known to Harmening, and without any new appraisement of the plaintiff's lands, (though they had risen greatly in value,) and without giving an additional bond or obtaining a new order of sale, (" for the purpose of getting money into his hands for his own private gain, without reference to the true interest of your orator in the premises, and willing that the said Harmening should get the lands bought at a low and under-price, connived and colluded with him, the said Harmening, to sell the said lands hereinafter described in violation of his duties and the trust imposed on him, claiming to act on the said order of sale long since entered in said court, sold, Dec. 4, 1874, to Harmening the following described lands, situated in Defiance County aforesaid, viz. : the north half of section thirty-six, in township four north of range three east, and the west half of the same section in the same township and range, containing together four hundred acres, for the sum of six thousand dollars, and reported the sale to the said court on the same day, and the same was, without proper examination, or opportunity for the friends of the said ward, your orator, or his relatives, to examine the same and advise the said court or the said Gleason in the premises, improperly, — illegally confirmed the said sale, and ordered the said guardian to make, execute, and deliver a deed for the same to the said Harmening on his compliance with the terms of sale, and further ordered the said guardian to pay out of the proceeds of said sale the sum of fifteen hundred dollars as and for the dower interest therein held by the said Mary Arrowsmith ").

The bill further charges that the order authorizing said sales to be made as well as the orders confirming them were illegal; that the sales made by Gleason were in violation of his trust and in fraud of his rights, " as the said Harmening and the said Gleason well knew;" that he has never received from said Gleason or from any source, to his knowledge, any of the proceeds of such sales, nor to his knowledge, belief, or information, have any part thereof been applied for his benefit; and that the deeds, placed upon record by Harmening, so cloud his title to said lands that he cannot sell them or otherwise enjoy the beneficial use of them.

After averring that he has been a non-resident of Ohio since 1869; that Harmening enjoyed, up to his death, all the rents and profits of said lands; that his heirs at law, who are infants, and defendants herein, are in possession of them, claiming to hold them under said pretended sales and deeds; and that Gleason has been for a long time hopelessly insolvent, so that an action at law against him would be unavailing; he prayed that a decree be rendered setting aside and vacating the order of sale in the Probate Court, and all proceedings therein affecting his title to the lands, and declaring the same, as well as the deeds executed by his pretended guardian, to be void and of no effect. He also prayed for the additional relief, specific and general, indicated in the beginning of this opinion.

*Mr. Henry Newbegin* and *Mr. Benjamin B. Kingsbury* for appellant.

*Mr. Henry B. Harris* and *Mr. William C. Cochran* for appellees. *Mr. John P. Cameron* was with them on the brief.

I. The appellant's title, if he has any, is a legal title, for which he has a plain, adequate and complete remedy at law, — an action for possession, with which, under the laws of Ohio, he may couple an action for mesne profits. Rev. Stat. Ohio, § 5019; *McKinney* v. *McKinney*, 8 Ohio St. 423.

If the proceedings in the Probate Court were such as to divest the legal title of appellant, and vest it in Harmening, he has no remedy, unless the proceedings were void for want of jurisdiction, or unless the orders were obtained by fraud, to which Harmening was a party. If the sales were *void* for want of jurisdiction, or for fraud in obtaining the orders, the remedy is equally adequate at law. *Hipp* v. *Babin*, 19 How. 271; *Miles* v. *Caldwell*, 2 Wall. 35; *Blanchard* v. *Brown*, 3 Wall. 245; *Grand Chute* v. *Winegar*, 15 Wall. 373; *Lewis* v. *Cocks*, 23 Wall. 466; *Ellis* v. *Davis*, 109 U. S. 485; *Killian* v. *Ebbinghaus*, 110 U. S. 568; *Fussell* v. *Gregg*, 113 U. S. 550; *United States* v. *Wilson*, 118 U. S. 86; *Frost* v. *Spitley*, 121 U. S. 552.

Instead of this complete remedy at law, he seeks inadequate relief in equity. Although he alleges that such order and deeds and entries "*cloud the title*" to the said lands so that he cannot effectually dispose of them, or otherwise make any beneficial use of them, he disclaims any intention to make this a bill to quiet title, for he would be met by the objection that a Court of Equity cannot sustain such a bill, because the complainant, by his own admission, is *out of possession*. 2 Story's Eq. Jur. § 859; Bispham's Principles of Equity, § 575; *Orton* v. *Smith*, 18 How. 263; *Stark* v. *Starrs*, 6 Wall. 402; *United States* v. *Wilson*, 118 U. S. 86; *Frost* v. *Spitley*, 121 U. S. 552; *Clark* v. *Hubbard*, 8 Ohio, 382; *Rhea* v. *Dick*, 34 Ohio St. 420.

Section 5779 of Ohio Revised Statutes provides, "That an action may be brought by a *person in possession*, by himself or tenant of real property, against any person who claims an estate or interest therein, adverse to him, for the purpose of determining such adverse estate or interest." By necessary implication a person *out of possession* cannot maintain such an action.

II. The Circuit Court of the United States has no power to grant the specific prayer of the bill, and set aside and vacate the orders of the Probate Court of Defiance County, and declare the same to be void and of no effect. *Fouvergne* v. *New Orleans*, 18 How. 470; *Tarver* v. *Tarver*, 9 Pet. 174;

*Adams* v. *Preston*, 22 How. 473 ; *Case of Broderick's Will*, 21 Wall. 503 ; *Ellis* v. *Davis*, 109 U. S. 485 ; *Fussell* v. *Gregg*, 113 U. S. 550 ; *Amory* v. *Amory*, 3 Bissell, 266. The cases of *Gaines* v. *Fuentes*, 92 U. S. 10, as limited and explained in *Ellis* v. *Davis, supra*, and of *Johnson* v. *Waters*, 111 U. S. 640, are not in conflict with these authorities.

We do not deny the right of courts of general jurisdiction to set aside *their own* judgments and decrees on bills of review, for errors apparent on the record, or original bills in the nature of bills of review for fraud in obtaining the judgments or decrees, where such bills are part of the recognized practice of the courts.

Most of the cases cited by counsel for appellant are of this nature, and do not at all support the theory that one court can entertain a bill to set aside the decree of another. *Taylor* v. *Walker*, 1 Heiskell, 734 : *Newcomb* v. *Dewey*, 27 Iowa, 381 ; *Lloyd* v. *Kirkwood*, 112 Illinois, 329 ; *Kuchenbeiser* v. *Beckert*, 41 Illinois, 172 ; *Lloyd* v. *Malone*, 23 Illinois, 43 ; *Wright* v. *Miller*, 1 Sandf. Ch. 103 ; *Reynolds* v. *McCurry*, 100 Illinois, 356 ; *McKeever* v. *Ball*, 71 Indiana, 398 ; *Sheldon* v. *Tiffin*, 6 How. 163 ; *Long* v. *Mulford*, 17 Ohio, 484 ; *S. C.* 93 Am. Dec. 638 ; *Bank of United States* v. *Ritchie*, 8 Pet. 128.

Assuming, for the sake of argument, that the Circuit Court has the right to entertain a bill for setting aside the orders and sales of a Probate Court on the ground of *fraud* in obtaining such orders, are the allegations of the bill in this case, taken in connection with the record which is annexed to and forms a part of it, sufficient to bring the case within such jurisdiction ? Where there is a discrepancy between the allegations of the bill as to what the record discloses and the record itself, the latter must be taken as conclusive. 1 Daniell's Ch. Pl. and Pr. (5th ed.), * 546.

As to the allegations concerning Hardy's agreement with Gleason, and his want of knowledge and consent to the filing of his bond without another surety, it is enough to say that the fraud, if there was any, was upon Hardy; that Harmening was in no way connected with it; that the validity of the bond when filed in court was not affected thereby, and

that Hardy could not escape his liability upon it. *Bigelow* v. *Comegys*, 5 Ohio St. 256; *Dangler* v. *Baker*, 35 Ohio St. 673–677; *Elliott* v. *Stevens*, 10 Iowa, 418; *Bloom* v. *Burdick*, 1 Hill, 130; *S. C.* 37 Am. Dec. 299; *Glezen* v. *Rood*, 2 Met. 490, 492; *Dair* v. *United States*, 16 Wall. 1; *Keys* v. *Williamson*, 31 Ohio St. 562, 563. It is nowhere alleged in the bill that Hardy is insolvent, or that the money could not be made out of him.

There is absolutely nothing in the allegations of the bill, thus far, that points to fraud upon the part of Gleason, Harmening, or the court, in obtaining these orders or making this sale, and, on the contrary, everything is consistent with the utmost good faith on the part of all concerned. When examined closely, the allegations amount to little more than a charge that said orders, sales, confirmations, etc., were irregular in some respects and, in the opinion of counsel for appellant, erroneous.

The necessity for the sales, and the sufficiency of the price were matters of fact which the court must pass upon before confirmation, and unless there is some specific allegation of corrupt action on his part, or fraudulent misrepresentations or concealment on the part of Gleason and Harmening, by which the court was imposed upon and induced to make unjust decisions in ignorance of what he ought to have known, his action must be held as final. *United States* v. *Throckmorton*, 98 U. S. 61.

If this court should consider that it is its province to examine the proceedings of the Probate Court of Defiance County with a view to determining whether the same were erroneous or not, we submit that in such investigation they would be governed by the rules applicable to a similar proceeding on a bill of review, and would be limited in the investigations to errors of law apparent on the face of the record. *Griggs* v. *Greer*, 3 Gilman (Illinois), 2; *Whiting* v. *Bank of the United States*, 13 Pet. 6.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

One of the grounds of demurrer was that the plaintiff had, upon his own showing, a plain, adequate and complete remedy at law, namely, an action of ejectment for the recovery of the lands in controversy. The statutes of Ohio, in force at the time Gleason was appointed guardian, as well as when these lands were sold by him, provides that : " Before any person shall be appointed guardian of the estate of any minor, he . . . . shall give bond, with freehold sureties, payable to the State of Ohio, . . . which bond shall be conditioned for the faithful discharge of the duties of said person as such guardian, and shall be approved by the court making such appointment." Rev. Stat. Ohio, p. 671, Swan & Critchfield, 1860. The same statutes prescribe the mode in which, and the purposes for which, the real estate of a minor may be sold. They give power to the Probate Court, by which the guardian of the person and estate, or of the estate only, was appointed, upon the application by petition of such guardian, to order the sale of the minor's real estate, whenever necessary for his education or support, or for the payment of his just debts, or. for the discharge of any liens on his real estate, or when such estate is suffering unavoidable waste, or a better investment of the value thereof can be made ; and, if it is satisfied that his real estate ought to be sold, then three freeholders must be appointed to appraise, under oath, its fair cash value. It is further provided :

" Sec. 27. Upon the appraisement of said real estate being filed, signed by said appraisers, the court shall require such guardian to execute a bond, with sufficient freehold sureties, payable to the State of Ohio, in double the appraised value of such real estate, with condition for the faithful discharge of his duties, and the faithful payment and accounting for of all moneys arising from such sale according to law.

" Sec. 28 [as amended by the act of February 15, 1867]. Upon such bond being filed and approved by the court, it shall order the sale of such real estate, . . . *Provided, however*, That if it is made to appear to such Probate Court that it will be more for the interest of said ward to sell such real estate at private sale, it may authorize said guardian to sell,

either in whole or in parcels, and upon such terms of payment as may be prescribed by the court; and in no case shall such real estate be sold at private sale for less than the appraised value thereof." Rev. Stat. Ohio, 1 Swan & Critchfield (1860), 671, 672, 675; §§ 6, 22 to 28 inclusive; 1 S. & S. 383.

It is evident that the bill was framed upon the theory: 1. That the bond given by the guardian at the time of his appointment was void, because filed in violation of Gleason's agreement with Hardy, and because it contained the name of but one surety; 2. The Probate Court was without jurisdiction, and its proceedings were absolutely void, because the guardian did not execute the additional bond required by the two sections last above quoted. If these propositions were sound it might be, as contended, that the plaintiff has a plain, adequate, and complete remedy at law. But we are of opinion that they cannot be sustained. As to the first one, it is clear that the delivery of the bond that Hardy signed, without procuring an additional surety, was a thing of which he, but not the plaintiff, may complain. Besides, the statute, upon any reasonable interpretation, does not require a bond with more than one freehold surety. The words " with freehold sureties" are not to be taken literally, so as to forbid the acceptance of a guardian's bond, with one surety, having sufficient property to make it good for the entire amount prescribed by the statute.

As to the suggestion that the proceedings in the Probate Court were void, because of its failure, upon the return of the appraisement, to require from the guardian an additional bond conditioned " for the faithful discharge of his duties, and the faithful payment and accounting for of all moneys arising from such sale according to law," we are of opinion that it is fully met by the decision of the Supreme Court of Ohio in *Arrowsmith* v. *Harmening*, 42 Ohio St. 254, 259. That was an action at law by the present appellant against Harmening to recover possession of the real estate now in controversy. The question was there distinctly made by him that the order of sale by the Probate Court was void, by reason of its

neglecting to take this additional bond. Adhering to its prior decision in *Mauarr* v. *Parrish*, 26 Ohio St. 636, the court held that, although the order of sale and the confirmation of the sales may have been erroneous, the Probate Court had jurisdiction of the subject matter, and of the parties, and its action, therefore, was not void. It further said that the decision in *Mauarr* v. *Parrish* had become a rule of property in Ohio, and could not be disturbed without consequences of a mischievous character. It is thus seen that the question now presented, as to the jurisdiction of the Probate Court to make the order for the sale of the lands now in controversy, and to confirm the several sales reported by the guardian, has been determined adversely to the appellant in an action brought by him against the present appellees. As this construction of the local statute should, under the circumstances stated by the Supreme Court of Ohio, be followed by the Circuit Court, we cannot approve the suggestion that the appellant has an adequate remedy by an action of ejectment for the recovery of these lands.

But is the appellant without remedy for the wrong alleged to have been done him? We think not. If all the substantial averments of his bill are true — and, upon demurrer, they must be so regarded — he makes a case of actual fraud, upon the part of his guardian, in which Harmening to some extent participated, or of which, at the time, he either had knowledge or such notice as put him upon inquiry. According to these averments, there was no necessity whatever for these sales, at least for the sale of the east half of the southwest quarter of section thirty-six, township four north, range three east, in Defiance County, containing eighty acres, or of the smaller tract in Paulding County, or of the four hundred acres in Defiance County that were sold in December, 1874. It is alleged, and by the demurrer it is admitted, that when the last sale was made, Gleason had in his hands unexpended, as Harmening well knew, large sums derived from the previous sales, as well as considerable amounts received from releases of tax titles on lands held by appellant; and yet, by collusion with Harmening, and in order that the latter might get the

lands for less than their value, he made the sale of the four hundred acres.

But it is insisted that the Circuit Court of the United States, sitting in Ohio, is without jurisdiction to make such a decree as is specifically prayed for, namely, a decree setting aside and vacating the orders of the Probate Court of Defiance County. If by this is meant only that the Circuit Court cannot by its orders act directly upon the Probate Court, or that the Circuit Court cannot compel or require the Probate Court to set aside or vacate its own orders, the position of the defendants could not be disputed. But it does not follow that the right of Harmening, in his lifetime, or of his heirs since his death, to hold these lands, as against the plaintiff, cannot be questioned in a court of general equitable jurisdiction upon the ground of fraud. If the case made by the bill is clearly established by proof, it may be assumed that some state court, of superior jurisdiction and equity powers, and having before it all the parties interested, might afford the plaintiff relief of a substantial character. But whether that be so or not, it is difficult to perceive why the Circuit Court is not bound to give relief according to the recognized rules of equity, as administered in the courts of the United States, the plaintiff being a citizen of Nevada, the defendants citizens of Ohio, and the value of the matter in dispute, exclusive of interest and costs, being in excess of the amount required for the original jurisdiction of such courts.

A leading case upon this point is *Payne* v. *Hook*, 7 Wall. 425, 430. That was a suit, in the Circuit Court of the United States for Missouri, by a citizen of Virginia, against a public administrator, to obtain a distributive share of an estate then under administration in a court of Missouri. It was objected that the complainant, if a citizen of Missouri, could obtain redress only through the local Probate Court, and that she had no better or different rights by reason of being a citizen of Virginia. But this court, observing that the constitutional right of the citizen of one State to sue a citizen of another State in the courts of the United States, instead of resorting to a state tribunal, would be worth nothing, if the court in

which the suit is instituted could not proceed to judgment and afford a suitable measure of redress, said : " We have repeatedly held ' that the jurisdiction of the courts of the United States, over controversies between citizens of different States, cannot be impaired by the laws of the States which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power.' If legal remedies are sometimes modified to suit the changes in the laws of the States and the practice of their courts, it is not so with equitable. The equity jurisdiction conferred on the Federal courts is the same as that the High Court of Chancery in England possesses ; is subject to neither limitation or restraint by state legislation, and is uniform throughout the different States of the Union. The Circuit Court of the United States for the District of Missouri, therefore, had jurisdiction to hear and determine this controversy, notwithstanding the peculiar structure of the Missouri probate system, and was bound to exercise it, if the bill, according to the received principles of equity, states a case for equitable relief. The absence of a complete and adequate remedy at law is the only test of equity jurisdiction, and the application of this principle to a particular case must depend on the character of the case as disclosed in the pleadings."

While there are general expressions in some cases apparently asserting a contrary doctrine, the later decisions of this court show that the proper Circuit Court of the United States may, without controlling, supervising, or annulling the proceedings of state courts, give such relief, in a case like the one before us, as is consistent with the principles of equity. As said in *Barrow* v. *Hunton*, 99 U. S. 80, 85, the character of the case " is always open to examination, for the purpose of determining whether, *ratione materiae*, the courts of the United States are incompetent to take jurisdiction thereof. State rules on the subject cannot deprive them of it."

This whole subject was fully considered in *Johnson* v. *Waters*, 111 U. S. 640, 667. That was an original suit in the Circuit Court of the United States for the District of Louisiana. It was brought by a citizen of Kentucky against citizens of

Louisiana. Its main object was to set aside as fraudulent and void certain sales made by a testamentary executor under the orders of a Probate Court in the latter State. It was contended that the plaintiff was concluded by the proceedings in the Probate Court, which was alleged to have exclusive jurisdiction of the subject matter, and that its decision was conclusive against the world, especially against the plaintiff, a party to the proceedings. This court, while conceding that the administration of the estate there in question properly belonged to the Probate Court, and that, in a general sense, the decisions of that court were conclusive and binding, especially upon parties, said: "But this is not universally true. The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally parties that are the victims of fraud. The Court of Chancery is always open to hear complaints against it, whether committed *in pais* or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it"—citing Story's Eq. Jur. §§ 1570–1573; Kerr on Fraud and Mistake, 352–353; *Gaines* v. *Fuentes*, 92 U. S. 10; and *Barrow* v. *Hunton*, 99 U. S. 80.

So, in *Reigal* v. *Wood*, 1 Johns. Ch. 402, 406: "Relief is to be obtained not only against writings, deeds, and the most solemn assurances, but against judgments and decrees, if obtained by fraud and imposition.' To the same effect is *Bowen* v. *Evans*, 2 H. L. Cas. 257, 281: "If a case of fraud be established equity will set aside all transactions founded upon it, by whatever machinery they may have been effected, and notwithstanding any contrivances by which it may have been attempted to protect them. It is immaterial, therefore, whether such machinery and contrivances consisted of a decree

of equity, and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud." See also *Colclough* v. *Bolger*, 4 Dow, 54, 64; *Barnesly* v. *Powel*, 1 Ves. Sen. 120, 284, 289; *Richmond* v. *Tayleur*, 1 P. Wms. 734, 736; *Niles* v. *Anderson*, 5 How. (Miss.) 365, 386.

These principles control the present case, which, although involving rights arising under judicial proceedings in another jurisdiction, is an original, independent suit for equitable relief between the parties; such relief being grounded upon a new state of facts, disclosing not only imposition upon a court of justice in procuring from it authority to sell an infant's lands when there was no necessity therefor, but actual fraud in the exercise, from time to time, of the authority so obtained. As this case is within the equity jurisdiction of the Circuit Court, as defined by the Constitution and laws of the United States, that court may, by its decree, lay hold of the parties, and compel them to do what according to the principles of equity they ought to do, thereby securing and establishing the rights of which the plaintiff is alleged to have been deprived by fraud and collusion.

*The decree is reversed and the cause remanded, with directions to overrule the demurrers, to require the defendants to answer, and for further proceedings consistent with law.*