### ARROWSMITH *v.* GLEASON *et al.*

*(Circuit Court, N. D. Ohio, W. D.* May 1, 1891.)

**1. GUARDIAN AND WARD—PROBATE SALE.**

Upon a bill in equity to set aside a sale by a guardian of a ward's lands under order of court, on the ground of fraud and collusion between the guardian and the purchaser, the federal court, as a court of equity, cannot sit in review to pass upon errors and irregularities in the proceedings of the probate court, but will confine itself to the issues as to whether the guardian acted fraudulently, and for his own benefit, and whether there was any collusion between him and the purchaser.

**2. SAME—VACATING—EVIDENCE OF FRAUD.**

Where a guardian, acting at the instance of his ward and of his ward's mother, who had a dower interest in the estate, procured an order of the probate court for the sale of real estate at its appraised value, made a sale, which was necessary to pay the ward's debt for board and lodging, and three years later, there being no further necessity therefor, and no new appraisement, made a further sale, and other sales of the balance later on, when there were still funds of the ward in his hands from the former sales and from other sources, such facts alone, in the absence of evidence of collusion with the purchaser, or of facts sufficient to put him on inquiry, or of any knowledge on his part of the condition of the ward's estate, will be insufficient to justify a court of equity in setting aside such sale, especially if it also appears that the price realized was the fair value of the land.

In Equity.

*Henry Newbegin, Benj. B. Kingsbury,* and *Doyle, Scott & Lewis,* for complainants.

*Harris & Cameron* and *William C. Cochran,* for defendants.

RICKS, J. On the 27th day of October, 1884, the complainant filed his bill in equity in this court against Edward H. Gleason and the administratrix, widow, and heirs at law of Frederick Harmening, deceased, seeking to have this court declare invalid certain deeds made by Edward H. Gleason, as guardian, to John F. Harmening, and asking an accounting in respect to the rents and profits of the lands so conveyed. A demurrer to said bill was filed by the defendants, which was heard in this court at its June term, 1885, before Judges WELKER and HAMMOND. The demurrer was sustained, and the bill dismissed, from which decree the complainants prayed an appeal to the supreme court of the United States, which appeal was heard at the October term, 1888, of said court. That court reversed the decree of this court, and remanded the case for further proceedings. 129 U. S. 86, 9 Sup. Ct. Rep. 237. In its decision the supreme court state fully and clearly the history of the transactions involved in this controversy, and so much thereof as is necessary to a clear understanding of the decision now about to be made is quoted:

"The case made by the bill is substantially as follows: The lands in controversy formerly belonged to John C. Arrowsmith, who died in 1869; his wife, and the plaintiff, his only child and heir at law, surviving him. On the 15th of July, 1869, Gleason petitioned said probate court to be appointed guardian of the estate of the plaintiff, then but six years of age. He applied to one Henry Hardy, a freeholder, to become surety upon his bond as guardian, in the penalty of $5,000, which Hardy did, upon the express agreement that, before the bond was delivered, Gleason would procure another surety of equal responsibility. Gleason filed the bond in the probate court without obtaining

the signature of an additional surety. The bond contained no condition, except that, if Gleason 'shall faithfully discharge all his duties as guardian, then the above obligation is to be void; otherwise, to remain in full force.' Upon its being filed, an order was made appointing Gleason guardian of the plaintiff's estate, and letters of guardianship were issued to him. On the 22d of July, 1869, Gleason filed a petition in the probate court of Defiance county, representing that no personal estate of the ward had ever come to his possession or knowledge, and that there was no such estate dependent upon the settlement of the father's estate, or upon the execution of any trust; that his ward was the owner of the fee-simple of certain tracts of land in Defiance county, one being section thirty-six in that county, containing 640 acres, less a small strip, containing 6 25-100 acres, used and occupied by the Wabash, St. Louis & Pacific Railroad Company as way-ground, and others, aggregating 400 acres, and, in addition, a tract of about seven acres in Paulding county; that the ward was, also, the owner of the fee-simple by virtue of tax-titles of certain other described tracts of lands in Defiance county, aggregating nearly one thousand acres, all of which, the petition alleged, were wild lands, yielding no income; that he had received no rents whatever from any of the ward's real estate; that its sale was necessary for the maintenance and education of the ward, who was indebted for boarding and lodging in the sum of $210; that there are no liens upon it, to his knowledge; and that the widow had a dower interest in said lands. The prayer of the petition was that the infant and widow be made defendants; that dower be set off to the latter; that the guardian be ordered to sell the real estate for the purposes above set forth; and that the petitioner have such other relief as was proper. The court ordered notice to be served upon the widow and infant of the hearing of the petition on the 10th day of August, 1869. Personal notice was given to the former, and the latter was notified by a written copy being left at the residence of his mother.

"The widow filed an answer in the probate court, waiving a formal assignment of dower by metes and bounds, and asking such sum out of the proceeds of sale, in lieu of dower, as was just and reasonable. On the 10th of August, 1869, the cause was heard, the probate court deciding that the real estate named therein should be sold. Thereupon appraisers were appointed to report its fair cash value. On the 17th of August, 1869, the probate court, without having taken any bond from the guardian, except the one above referred to, which was conditioned simply for the faithful discharge of his duties, made this order: ' It is therefore ordered by the court that the same [the report] be, and it is hereby, approved and confirmed; and the said Edward H. Gleason having upon his appointment as such guardian given bond with reference to the value and sale of the said real estate of his said ward, which bond is now adjudged to be sufficient for the purposes hereof, therefore the giving of additional bond is hereby dispensed with.' And on the 10th day of November, 1869, the following order of sale was entered in said cause: ' Said guardian is ordered to proceed to sell said lands, or any parcel thereof, at private sale, but at not less than the appraised value thereof, and upon the following terms: One-third cash in hand on the day of sale, one-third in one year, and one-third in two years, with interest, payable annually, and the deferred payments to be secured by mortgage on the premises sold.' Within a few days after this order was made, Gleason reported to the probate court that he had sold to John Frederick Harmening, at private sale, and for the sum of $1,537.50, 'that being the full amount of the appraised value thereof,' the south-east quarter of said section thirty-six, excluding the small strip occupied by the railway company. The sale was approved, and the guardian directed to make a conveyance to the purchaser, reserving for the widow, in lieu of dower, the sum of $400 out of the proceeds. The bill charged that on the 15th of February, 1873,

more than three years after the said order of sale was entered, and without any new or further appraisement of plaintiff's lands, though their value, as he was informed, had greatly advanced, and without any additional bond having been executed, Gleason, 'for the purpose of getting money into his hands for his own private gain, and without reference to the true interest of his ward,' and 'willing to allow the said Harmening to get at a low and under price the lands' of the plaintiff, and 'though there was no necessity whatever for said sale, as he, the said Gleason, and the said Harmening well knew,' sold to the latter at a private sale, for the sum of $872.10, the east half of the south-west quarter of section thirty-six, in Defiance county, containing eighty acres, and a tract of 7 21-100 acres in Paulding county, which sale, being reported to the probate court, was by it wrongfully approved, and a deed directed to be made, and was made, to the purchaser, the sum of $200 being reserved out of the proceeds, pursuant to the order of the court, for the dower interest of the widow.

"The plaintiff also alleges that, notwithstanding there was no necessity for any further sale or sacrifice of his estate of inheritance, Gleason, on the 4th day of December, 1874, although having in his hands, unexpended, large sums derived from the sale of the above premises, as well as considerable sums received from the release of tax-titles, all of which was known to Harmening, and without any new appraisement of the plaintiff's lands, though they had risen greatly in value, and without giving an additional bond or obtaining a new order of sale, 'for the purpose of getting money into his hands for his own private gain, without reference to the true interest of your orator in the premises, and willing that the said Harmening should get the lands bought at a low and under price, connived and colluded with him, the said Harmening, to sell the said lands hereinafter described in violation of his duties, and the trust imposed on him, claiming to act on the said order of sale long since entered in said court, sold to the said Harmening the following described lands, situated in Defiance county, aforesaid, viz.: The north half of section thirty-six, in township four north, of range three east, and the west half of the same section, in the same township and range, containing together four hundred acres,—for the sum of six thousand dollars, and reported the sale to the said court on the same day, and the same was, without proper examination, or opportunity for the friends of the said ward, your orator, or his relatives, to examine the same, and advise the said court or the said Gleason in the premises, the court improperly and illegally confirmed the said sale, and ordered the said guardian to make, execute, and deliver a deed for the same to the said Harmening on his compliance with the terms of sale, and further ordered the said guardian to pay out of the proceeds of said sale the sum of fifteen hundred dollars as and for the dower interest therein held by the said Mary Arrowsmith.'

"The bill further charges that the order authorizing said sales to be made, as well as the orders confirming them, were illegal; that the sales made by Gleason were in violation of his trust, and in fraud of his rights, 'as the said Harmening and the said Gleason well knew;' that he has never received from said Gleason, or from any source, to his knowledge, any of the proceeds of such sales, nor, to his knowledge, belief, or information, has any part thereof been applied for his benefit; and that the deeds placed upon record by Harmening so cloud his title to said lands that he cannot sell them, or otherwise enjoy the beneficial use of them. After averring that he has been a non-resident of Ohio since 1869; that Harmening enjoyed, up to his death, all the rents and profits of said lands; that his heirs at law, who are infants, and defendants herein, are in possession of them, claiming to hold them under said pretended sales and deeds; and that Gleason has been for a long time hopelessly insolvent, so that an action at law against him would be unavailing,—

he prayed that a decree be rendered setting aside and vacating the order of sale in the probate court, and all proceedings therein affecting his title to the lands, and declaring the same, as well as the deeds executed by his pretended guardian, to be void and of no effect. He also prayed for the additional relief, specific and general, indicated in the beginning of this opinion."

Under the mandate sent down to this court under the above decision, this cause has proceeded regularly to a final hearing. Answers have been filed by all the defendants, and voluminous testimony has been taken by both parties. The case is now presented upon the bill, answers, replication, and this testimony. As there is still a wide difference of opinion between the counsel as to the powers of this court in this case, it is perhaps important to consider, at the outset, what the supreme court of the United States decided when this case was before it on appeal, as hereinbefore stated. It was contended in that court by the defendants that the complainant, upon his own showing, had a plain, adequate, and complete remedy at law, to-wit, an action of ejectment for the recovery of the lands in controversy. After a careful review of the statutes and decisions of the supreme court of Ohio, the court held that this ground for demurrer was not well taken, and that the complainant had not an adequate remedy by an action of ejectment for the recovery of these lands. The court then proceeded to define very distinctly upon what grounds this court acquired jurisdiction of this case, and the nature of the relief that it might administer if proper proofs in support of the allegations of the bill were made. Inasmuch as it is now contended by the counsel for the complainant that this court in this proceeding is vested with power to review the proceedings of the probate court of Defiance county for error, and, independent of any charge or proof of actual fraud on the part of the guardian, or such knowledge as ought to have put him upon his inquiry on the part of the purchaser, this court has the power to administer the relief prayed for, it becomes all the more important to clearly determine just what the supreme court of the United States outlined and defined the powers of this court to be in this case. After disposing of the contention that the complainant's remedy at law was sufficient, the court said:

"But is the appellant without remedy for the wrong alleged to have been done him? We think not. If all the substantial averments of his bill are true,—and upon demurrer they must be so regarded,—he makes a case of actual fraud upon the part of his guardian, in which Harmening to some extent participated, or of which at the time he either had knowledge or such notice as to put him upon inquiry. According to these averments, there was no necessity whatever for these sales, at least for the sale of the east half of the south-west quarter of section thirty-six, township four north, of range three east, in Defiance county, containing eighty acres, or of the smaller tract in Paulding county, or of the 400 acres in Defiance county that were sold in December, 1874. * * * It is alleged, and by the demurrer it is admitted, that when the last sale was made Gleason had in his hands, unexpended, as Harmening well knew, large sums derived from the previous sales, as well as considerable amounts received from releases of tax-titles on lands held by the appellant; and yet, by collusion with Harmening, and in order that the latter might get the lands for less than their value, he made the sale of the 400 acres."

Assuming that these allegations made in the complainant's bill were to be sustained by the proof, the court held that the circuit court would have jurisdiction to afford a complete remedy by declaring the deeds from Gleason, guardian, to the defendant Harmening null and void, as having been obtained by actual fraud. The court in this opinion clearly marked out the lines upon which the jurisdiction of this court should run, the nature of the relief to be administered, and the exact character of the proof necessary to give jurisdiction. It is very evident from this statement of the supreme court that it did not contemplate that this court should sit in this case with power to simply review the proceedings of the probate court of Defiance county for error. We cannot undertake to disturb the rights acquired by the defendants under and by virtue of any proceedings in that court, unless the allegations of fraud made in the bill are sustained, and such proceedings thereby vitiated. The jurisdiction of this court rests solely and entirely upon the charge of actual fraud, which tainted and made absolutely void all the acts and proceedings of that court relating to the sale of the lands in controversy. If this proof fails to sustain these allegations of fraud, this court has no power to deprive the defendants in this case of any rights acquired by reason of the proceedings of that court. We are therefore now called upon to scrutinize the conduct of the parties in this proceeding. The fraudulent acts to be established, necessary to maintain this bill, it seems to the court, are clearly defined to be in substance as follows, viz.: To show that there was no necessity for the sale of these lands by the guardian, or, at least, of the second sale, made in 1873, and the third sale, made in 1874; that when the last sale was made the guardian had in his hands, unexpended, large balances from the previous sales, as well as from releases of tax-titles on other lands of the ward; that Harmening knew these facts, or had such knowledge of them as to put him upon inquiry; that, through collusion, and in order to aid Harmening to buy said lands for less than their value, the guardian made the last sale of 400 acres; that said sales were confirmed by the probate court without opportunity on the part of the complainant or his friends to examine the same; that said lands were sold for less than their value, as a part of the fraudulent scheme between the guardian and the purchaser; and that the complainant received no advantage or benefit from such sales.

This is an extended statement of the frauds necessary to find in order to entitle the complainant to the relief prayed for. The supreme court epitomizes it by saying that the facts must disclose, "not only imposition upon a court of justice in procuring from it authority to sell an infant's lands when there was no necessity therefor, but actual fraud in the exercise, from time to time, of the authority so obtained." Does the testimony disclose any such imposition upon the court, or any fraud on the part of the guardian in the exercise of the authority to sell conferred upon him? That we may clearly understand the position from which the testimony in this case is to be reviewed, it is proper to note that the answers filed in this case on behalf of Gleason, as guardian, and the widow and heirs of Harmening, the purchaser, fully and squarely

meet all the allegations of fraud made in the bill, and deny every material fact alleged which imputes fraud or fraudulent intent either upon the court, upon the guardian, or upon Harmening, the purchaser of said land. The bill not having waived an answer under oath, and said answers having been sworn to, it devolves upon the complainant to make out the allegations of fraud by the positive testimony of two witnesses, or of one witness and such corroborating circumstances as in the judgment of the court shows the preponderance of proof to be upon the side of the complainant.

Now, what are the facts as fairly to be deduced from the testimony taken and filed in this case? It is fairly established that at the time of his appointment as guardian Gleason was solvent, and a man in every way suitable to be appointed to such a charge. His appointment was satisfactory to the relatives and mother of the ward, and Gleason avers in his answer that he accepted the appointment at their solicitation. The lands of which the ward was possessed were non-productive, and he had no other source from which to obtain the money necessary for his support and education. He lived in a distant state with his mother, who was not capable of advising him as to the renting and management of his landed estate, situated in Ohio. When the guardian was appointed, a bond was given and filed, conditioned for the faithful discharge of his duties. On the 23d of July, 1869, after his qualification and the filing of said bond, the guardian filed his application in court, asking for a sale of a portion of his ward's lands, and reciting in his petition the reasons for such sale. The ward and his mother, who had her dower interest in the lands, were duly notified, and answered, and the sale was ordered to be made after due appraisal. The testimony shows that the prices at which the several tracts of land were sold were fair and just, as compared with sales of similar lands of the same grade in the same neighborhood, and at about the same time. In fact there is a fair preponderance of evidence that, as to the sale of the largest tract, the price was above that obtained for lands of the same class in that locality at that time. The testimony further discloses the fact to be that, before Harmening made the purchase of either of these tracts of land, he consulted with reputable attorneys as to the regularity of proceedings in the probate court, asking their opinion as to the title he would obtain as the purchaser at such a sale. The testimony further shows that these attorneys, after due examination, and after proper inquiries of the guardian, advised Harmening that the proceedings were regular, and that he would obtain good title as purchaser. He owned several tracts of land adjacent to those sold by these probate court proceedings, and desired to purchase these lands because of their proximity to the other tracts so owned by him. The testimony of a large number of witnesses has been taken as to the value of these lands at the time of the three sales in controversy. The decided preponderance of testimony is that the lands were sold for substantially all they were worth; in fact, counsel in argument substantially conceded this fact to be so, as established by the testimony.

It further appears from the records of the probate court, and from other testimony, that each sale was made upon the advice of an uncle of the ward, and at the solicitation of the mother, who desired to secure her dower interest from the proceeds. It is further shown that the widow and mother did receive from each sale her full amount of dower interest.

The charge that the guardian made these sales for his own personal benefit, and to accumulate money in his hands for his private use, is not sustained by the testimony. Even if this were true, there was nothing in the general reputation as to his solvency at about the time of these sales to have put Harmening upon his inquiry. He was generally believed to be perfectly solvent, and the probate court, having found, under the petition, that the statutory reasons to justify the sales of a minor's property existed, Harmening had no cause for suspicion that any fraud was contemplated by the guardian. Gleason positively denies in his answer any collusion or combination or understanding between himself and Harmening of the character charged in the bill. There is no proof to sustain such charge. There are no circumstances which ought to have put Harmening on his inquiry as to any such fact. The facts further show that Harmening paid not only the full price for the land, but he paid the full amount due upon all the notes given by him for such purchase price. He therefore has fully discharged all obligation assumed by him as purchaser under said sales. The probate judge who acted in this matter denies all fraud and collusion on his part, denies all knowledge of any fraud or collusion between the guardian and the purchaser, and there is therefore nothing to show that the court was imposed upon by fraud. This is one of the essential elements of fraud necessary to be established, as intimated by the supreme court, before the complainant can maintain his bill in this case.

Counsel for the complainant dwell with special emphasis upon the claim that the guardian had unexpended balances on hand before the second and third sales of real estate were made; but such a fact, even if established, and brought to the knowledge of Harmening, would not, in itself, be sufficient to make a case of fraud. The statute fixes several proper reasons which would authorize the probate court to sell the lands of a minor. Whenever a sale is necessary for the education or support of the minor, or for the payment of his just debts, or for the discharge of any liens on his real estate, or when such estate is suffering unavoidable waste, or a better investment of the value thereof can be made, all such reasons are proper to be considered by the court in ordering a sale. An unexpended balance in the hands of the guardian would therefore not in itself have been sufficient to have justified a suspicion of fraud. That balance might have been held for the future education or support of the minor, or for a better investment thereof. But there is no evidence to show that Harmening had knowledge of such an unexpended balance, or of such facts connected therewith as should have put him upon his inquiry. The court is therefore compelled to find, from the testimony in the case, that the complainant has utterly failed to sustain the allegations of his bill in any single respect of fraud charged therein.

There being no fraud which imposed upon the probate court in procuring from it the authority to sell the lands in controversy when there was no necessity therefor, and no fraud shown on the part of the guardian in the exercise of his authority to sell the same, the power of this court to grant the relief in this case is wholly wanting. As before stated, I think it a very fair conclusion, from the opinion of the supreme court, that in this case this court cannot sit simply to review the errors of proceedings of the probate court, although it may now be satisfied that such error actually existed. In the absence of fraud in the respects hereinbefore stated, this court has no jurisdiction to give the relief asked. It cannot look back of the order of the probate court finding that there was a necessity for a sale of the ward's lands, unless the allegation of the bill that the court was imposed upon by fraud and collusion is sustained. That court had jurisdiction of the persons and subject-matter. We cannot, therefore, review those proceedings, as upon error, for mere irregularity. The proof of actual fraud is essential to impugn its decrees before this court can acquire jurisdiction to afford relief to the parties.

It was contended by counsel in the supreme court, as it is in this court, that the failure of the guardian to give the bond provided by the statute to cover each sale of the land, and the invalidity of the only bond given, because signed by only one freehold surety, the guardian's breach of faith with that surety, because he filed it without an additional surety, as he promised, and the other specific irregularities in the probate court proceedings, were errors which could be reviewed in this proceeding. But these claims were denied in the supreme court, and cannot now be renewed here. But the claim of superior equities in favor of the complainant is not sustained by the proofs. The facts are that the complainant and his mother did receive the greater part of the proceeds of these sales; all, in fact, except that lost by the guardian's insolvency. And if the ward and his uncle and mother had been as diligent in their efforts to watch the funds after they reached the guardian's control as they had been to procure the sale of the lands, they would not have lost any portion of his inheritance. Their failure to do so was the cause of such loss. There was no legal or moral obligation resting upon Harmening, the purchaser, to guard the purchase price of the lands after he had placed it in the hands of its legal custodian. Its loss after he parted with it cannot affect his title to the lands, or impugn his good faith in the transaction; and having given full value for what he purchased, and having paid the purchase price to the custodian provided by law, and having become the purchaser at the solicitation of the ward's guardian and nearest friends and advisers, and having shown himself free from all collusion and fraud in every stage of the transaction, it now seems to the court that, so far from the equities of the case being with the complainant, as pleaded in the bill, they are unquestionably with the defendants, and the heirs at law of the deceased purchaser hold their title free from any cloud or taint of fraud, so far as it is assailed by these proceedings.

A decree may be prepared accordingly.