## HARTMAN et al. v. BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N.

### No. 10319.

Circuit Court of Appeals, Ninth Circuit.

Sept. 13, 1943.

Russell P. Tyler and Hugo D. Newhouse, both of San Francisco, Cal., for appellants.

Louis Ferrari, G. D. Schilling, Keyes & Erskine, and Morse Erskine, all of San Francisco, Cal., for appellee.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal by the plaintiffs from an order of the trial court dismissing their complaint as to the Bank of America National Trust & Savings Association, one of several defendants. The Bank's motion for dismissal was made upon the ground that no cause of action was stated against it because the matter was res judicata under an order and a decree of the California probate court, referred to in the complaint, and because the action was barred by limitations and laches.

The action is for fraud, and seeks recovery of $3,000,000, an accounting and other relief. The complaint occupies forty-five pages of the transcript and is too long to set out herein, but its allegations, which for the purpose of this appeal must be accepted as true, may be summarized as follows:

In May 1933 two attorneys, partners practicing in Nevada, informed Mrs. Dole, a client residing in San Mateo County, California, that a certain mining property in Mono County, California, was about to be sold at a receiver's sale, that the price would probably be about $18,500, that a deposit of only ten per cent would be needed at the time of purchase, and that the balance of the price could readily be obtained by resale, for $30,000 or more, of part of the machinery or of water rights included in the property. Following their recommendation of this investment Mrs. Dole sent her attorneys $2,500 to cover the deposit and authorized them to bid up to $25,000 for her. The attorneys made a successful bid of $18,500 and paid $1,850 deposit, taking the property in the name of one of them but on Mrs. Dole's account. Thereafter the attorneys arranged with a third party who had full knowledge of the facts that he should advance funds to pay the balance of the purchase price in return for which the entire property would be transferred to a corporation of which half the stock would belong to him and half to the attorneys. This arrangement was consummated, but the attorneys did not inform Mrs. Dole of it, merely telling her that it had been necessary, in order to secure the balance of the purchase price and protect her investment, to resell the entire property at a profit of only $500, which sum was returned to her with her $2,500 advanced. Mrs. Dole acquiesced without question in this report. Thereafter, in February 1934, Mrs. Dole died

intestate, leaving as heirs two sisters (plaintiffs and appellants herein), her husband and a brother. The defendant Bank was appointed administrator of Mrs. Dole's estate, being represented in the matter by two California attorneys. Soon after Mrs. Dole's death her husband informed plaintiffs, residents of New York and New Jersey, respectively, that certain matters regarding the estate required legal attention, that he had retained the Bank's attorneys to represent him in the matter, and that he would be glad to retain them on behalf of plaintiffs also. This was accordingly done, Mr. Dole fully explaining to the attorneys the transaction regarding the mining property and employing them, on a fifty per cent contingent fee, to seek recovery from the Nevada attorneys on behalf of himself and plaintiffs. No specific explanation of the facts, however, was given to plaintiffs. Thereafter the Bank as administrator arranged with the Nevada attorneys for compromise of the claim against them upon payment by one of them of $5,000. Mr. Dole and the California attorneys protested to the Bank that the proposed compromise payment was inadequate, but the Bank insisted that it would submit the proposal to the probate court for approval, employing different attorneys for that purpose if necessary. Mr. Dole protested further to the attorneys who told him that the settlement was not for the best interests of the estate but that it would be useless to oppose any proposal submitted to the court by the Bank, that the settlement was illegal and not binding on the heirs, and that in any event it would release only the one Nevada attorney in whose name the property had been taken and who was to make the payment, and not his partner. They advised Mr. Dole that they would represent the heirs in court and that it would be useless for him to appear. Thereafter they, representing the Bank as administrator, presented the proposed compromise to the court and secured its approval, Mr. Dole remaining absent from the hearing in reliance on their advice. Approval of the settlement was included also in the decree of final distribution, secured likewise by the California attorneys acting for the Bank and from the hearing on which Mr. Dole again remained absent for the same reasons. Releases of the claim against the Nevada attorney who paid the $5,000 were executed by the Bank and by Mr. Dole, the latter relying on the representation by the California attorneys that the second Nevada attorney would not be released thereby. At the time of the compromise the value of the mining property was many times $5,000 and it is now $3,000,000. The Nevada attorneys have received over $50,000 as dividends and attorneys' fees from the corporation that purchased the property from Mrs. Dole. The Bank was led to enter into the compromise agreement by its desire to protect the Nevada attorneys because the Bank is owned by a holding corporation which also owns a Nevada bank for which the Nevada attorneys are attorneys and of which one of them is a director. "All" of the facts alleged, including the nature of the estate's right against the Nevada attorneys, were concealed from the probate court when the compromise was presented to it for approval.

Upon the basis of the original fraud on Mrs. Dole, the plaintiffs sued the Nevada attorneys, the corporation that bought the mining property, and other defendants not here material, joining also as defendants the husband and brother of Mrs. Dole because they declined to join as plaintiffs. The theory of the action was that the mining property and its proceeds acquired in violation of a fiduciary duty owed to Mrs. Dole were held in trust for her and her heirs. The relief sought was a decree for $3,000,000 and an accounting on behalf of the heirs, and a determination that the plaintiffs were entitled to $1,000,000 thereof. From facts alleged in the answer of one of the Nevada attorneys the plaintiffs first learned facts which put them on inquiry from which they discovered the facts surrounding the securing of the probate order and decree. Thereupon they amended their complaint to join as defendants the Bank and the other California attorney and to seek avoidance of the probate order and decree and releases executed in pursuance thereof. It is from the trial court's order dismissing the amended complaint as to the Bank that this appeal is taken.

Two frauds are alleged by the complaint; first, the fraud of the Nevada attorneys in securing a secret profit at the expense of their principal, Mrs. Dole, and second, the fraud of the Bank and the California attorneys in compromising the resulting claim, for private reasons of the Bank's, for an inadequate sum and without disclosing the facts of the claim to the plaintiffs or to the court that was called upon to approve the compromise. The theory of appellants' action is not altogether clear.

As against the parties to the original fraud on Mrs. Dole the contention appears to be that because of the fraud Mrs. Dole retained an equitable title to the mining property involved, which has passed to her heirs under the provision for unknown and undiscovered property in the decree of distribution in her estate. However, the Bank neither participated in that original fraud nor holds any of the property involved. As against it the only claim apparently arises from the fraud in compromising the original claim and securing the probate court's order and decree of approval. It must be noted, however, that this is not a proceeding to set aside the decree and order of the probate court. In such a suit, the mere fact that the orders attacked had been secured on the Bank's petition might suffice to make it a proper party defendant, but such a proceeding could of course be brought only in the court that made the orders. Arrowsmith v. Gleason, 129 U.S. 86, 98, 9 S.Ct. 237, 32 L.Ed. 630. All that can be done in this action is to refuse to give effect to the probate orders in determining the rights of the parties, if it be determined that those orders were secured by extrinsic fraud. Thus there is no occasion to join the Bank as a defendant unless some substantive right is asserted against it beyond the mere disregarding of the probate order and decree.

▪ The appellants in their brief state that " * * * it was conceded in the, court below that if the facts relied upon as pleaded in the second amended complaint constitute intrinsic fraud, the foregoing orders made by the probate court in the said estate of Martina Maxine Dole would be res adjudicata. If, on the other hand, said facts and circumstances as pleaded in the second amended complaint constitute extrinsic fraud, the said aforesaid orders would not be a bar to the present suit." We agree with this contention, but it by no means follows that if the fraud is extrinsic and consequently can be used as a basis for ignoring the probate orders, then the plaintiffs have stated a cause of action against the Bank, because in that view of the case no damage has resulted to the plaintiffs because of the entry of such orders. That is to say that no cause of action has been stated against the Bank, whether we regard its alleged fraudulent acts as extrinsic or intrinsic to the probate orders attacked.

▪▪ The appellants in their brief suggest that the probate order confirming the settlement of the claim against the Nevada attorney was void because of a lack of jurisdiction because, states the brief: "No probate court, which is a court of limited jurisdiction, has the right to deprive or divest the title of real property vested by operation of law in the heirs of a deceased person. We submit the point by way of passing, as it must be obvious that in any event the ground set forth in the motion to dismiss must of necessity be insufficient upon which to predicate any such order." While it is not true that there is a probate court in California, but probate jurisdiction is vested in the Superior Court, a court of general jurisdiction, it is true that the power of a Superior Court sitting in probate is limited in many particulars by express statutory provisions. The method of sale or disposition of real estate is specially declared by statute, but the power to settle and adjust or compromise claims against or in favor of an estate is clear, § 578, Probate Code of California, and if the compromise is approved by the court it protects the administrator. See § 1908 California Code of Civil Procedure; 11 b, Cal.Jur. 288, sec. 874. We need not pursue the point thus incidentally presented by appellants for the reason that if the order of compromise is void for any reason and the final decree settling the administrator's final account is also void, as suggested by appellants, it would follow that no damage has been done to the appellants by a void order or decree, for which they would have redress against the Bank.

In view of our conclusion it becomes unnecessary to determine most of the questions discussed in the briefs.

Decree affirmed.