RHINO v. EMERY et al.

(Circuit Court of Appeals, Sixth Circuit. December 11, 1895.)

No. 345.

1. PLEADING—HEIRSHIP.

An averment that the blood of both the ancestors on the paternal side, in the second generation from one from whom the pleader claims to inherit, as next of kin on the mother's side, is extinct, is a sufficient averment that there is no one of the blood of such ancestors to inherit.

2. EQUITY PLEADING—FRAUD.

An averment that one B. was from infancy and during all his life of unsound mind, and incapable of transacting business, and that B.'s mother and her legal adviser fraudulently procured from B. a deed of property, for a grossly inadequate consideration, which was never paid to him nor to any one for his use, is a sufficient averment of fraud in procuring such conveyance.

3. SAME.

Complainant's bill alleged that one. E. had obtained by fraud a conveyance from her son of certain land devised to him by his father, E.'s husband; that subsequently she had instituted proceedings in a probate court, as executrix of her husband, to procure the sale of the same land to pay the testator's debts, and had obtained an order to that effect, directing the surplus to be paid to herself, under which she had received a large sum of money, such proceedings in the probate court being alleged to be fraudulent. Complainant, claiming to be B.'s heir, sought to set all these acts aside, and hold the representatives of E. as trustees for him. *Held*, on demurrer to the bill, that it was not necessary that the proceedings in the probate court should be set aside before B. would be entitled to such relief.

4. LIMITATIONS—ACTION TO CONTEST VALIDITY OF WILL.

A limitation of time for bringing a suit to contest the validity of a will does not apply to a suit to establish a trust in property which is alleged to have been diverted from its true owners by fraud, and to have passed into the hands of others under sundry conveyances, including a will.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

David Stewart Hounshell, for appellant.

Herbert Jenney, for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge. This is an appeal from a decree dismissing an amended bill on demurrer. 65 Fed. 826. The bill in general charges the defendants, or some of them, with having obtained title to and possession of the proceeds of a large amount of real property belonging to one James Berry, 2d, by fraud; avers that James Berry, 2d, died May 13, 1891; that the complainant is entitled to a moiety of his estate; and that he is therefore entitled to hold the defendants as trustees for his share of the property described in the bill.

The first ground upon which the action of the court is sought to be upheld is one not taken by the court below. It is that the complainant does not show by the averments of his bill that he is the heir and next of kin of James Berry, 2d, according to the laws of Ohio. The property in controversy was real estate be-

longing to and descended from James Berry, Jr., the father of James Berry, 2d. James Berry, Jr.'s, father was James Berry. His mother was named Rolston. The bill avers that the blood both of James Berry and of the Rolstons is extinct, and that complainant is a first cousin of James Berry, 2d, being the nephew of his mother, Eliza Berry, and is his next of kin. Section 4158, Rev. St. Ohio (the statute of descents), provides that, when there are none of certain relations living, the estate shall pass to the next of kin to the intestate of the blood of the ancestors from whom the estate came, or their legal representatives. Section 4160 provides that, when there is no person to inherit under this clause, the estate shall pass to the husband or wife relict of the intestate as heir; and, if there is no such relict, then it shall pass to and vest in the next of kin of the intestate, though not of the blood of the ancestor from whom the estate came. Now, it is said that the complainant, claiming under this latter section, must show that there is no one of the blood of the ancestor from whom the real estate came who can inherit. He has done so by the averments of his bill, for, after averring that the ancestor from whom the property descended was a son of Berry and a Rolston, he avers that the blood of the Berrys and Rolstons, the ancestors of James Berry, 2d, on his paternal line, became extinct. This certainly excludes the possibility of any next of kin to James Berry, 2d, of the blood of James Berry, Jr., and makes section 4160 applicable.

The defendants in the bill against whom relief is asked are William G. Roberts, Sarah A. Weller, Thomas J. Emery, and John J. Emery, and M. E. Sperry. M. E. Sperry is alleged to be a coheir with the complainant, and is made party defendant that his interest may be preserved to him. The bill alleges that James Berry, Jr., died possessed of three valuable pieces of real estate; that he devised this estate to his wife, Eliza A. Berry, for life, with remainder to his two children, James Berry, 2d, and Kate E. Berry, providing that, in case of the death of either of the children before the death of his wife, the entire remainder should pass to the surviving child; that all the debts of the testator were paid shortly after his death; that Kate Berry married, and died without issue; that James Berry, 2d, was from his early infancy and during the whole period of his life a person of unsound mind and of weak understanding, and wholly incapable at any period of his life of transacting any business by reason of his mental incapacity and imbecility; that upon the death of his sister, in 1882, the defendant William G. Roberts and the mother of James Berry, 2d, Eliza A. Berry, conspired together for the fraudulent purpose of securing the title to the real estate devised to James Berry, 2d, by the will of his father, James Berry, Jr., so that they might appropriate the property to themselves; that at that time Eliza A. Berry was more than 70 years of age, and that her son, James Berry, 2d, was verging to the age of 40 years; that William G. Roberts, the defendant, was the legal adviser of Eliza A. Berry,

and had great influence over her, and that, through his induce-ment, they together, on the 21st of August, 1882, fraudulently pro-cured a deed from said James Berry, 2d, an imbecile person and of unsound mind, by which he conveyed all his real estate to the said Eliza A. Berry, for the "grossly inadequate consideration of $3,000, no portion of which said sum was ever paid to said James Berry, 2d, or to any other person for his use"; that the real estate so conveyed was soon thereafter sold for more than eight times the amount of the said $3,000; that in 1885 the said Roberts and Eliza A. Berry procured an order from the probate court of Ham-ilton county, Ohio, appointing Roberts statutory guardian of James Berry, 2d; that, in furtherance of their fraudulent scheme, Eliza A. Berry, as executrix of the estate of her husband, more than 22 years after his death, under the fraudulent pretense of paying the debts of the testator, instituted suit in the probate court of Ham-ilton county, Ohio, against herself and against her son, James Berry, 2d, and Roberts, as guardian of said son, for the purpose of selling said real estate, and that on April 18, 1885, she obtained a judgment for the sale of said lands, long after her power to sell had become inoperative, and soon thereafter obtained an order confirming the sale, and ordering deeds conveying to the purchasers of the said lands so sold under the irregular and void proceed-ings in said suit; that Roberts acted as one of the attorneys of record in said suit for Eliza A. Berry, and conducted the same as the leading counsel for her; that the petition in said suit for the sale of said real estate recited a debt which was a mere pre-tended and fictitious one, and had no foundation in fact; that the sale resulted in bringing to Eliza A. Berry some $12,000, $8,000 of which was held until her death; that on August 23, 1886, Eliza A. Berry made her will, which was drafted by Roberts; that on the 9th of September, 1886, she died, and in the will appointed Roberts trustee under the will for her son, gave him complete power of controlling her estate by sale and reinvestment, directed him to provide for the support of her son, and, upon his death, made Roberts and the defendant Sarah A. Weller joint legatees and devisees of whatever should remain of her estate; that the executor of this will turned over the $8,000, the proceeds of the sale of the land in the probate court, to Roberts, as trustee for James Berry, 2d; that Roberts thereafter procured an order com-mitting James Berry, his ward and cestui que trust, to the insane asylum, where he remained until his death, on the 13th of May, 1891. The bill further avers that at the time of the death of James Berry, 2d, there remained of the estate of James Berry, Jr., undisposed of, a valuable piece of land on Longworth street, in Cincinnati, which, on December 8, 1891, Roberts and Sarah A. Weller, by deed, in consideration of the sum of $16,700, sold and conveyed to the defendants Thomas J. Emery and John J. Emery; that the defendants the Emerys did not pay the purchase money to Roberts, but have some secret understanding by which the payment is deferred, of which the complainant is ignorant.

The bill avers that the Emerys had full notice and knowledge of all the facts and circumstances under which Roberts and Mrs. Weller obtained title and power to sell the real estate in question, and that they therefore cannot claim as bona fide purchasers. The prayer of the bill is that William G. Roberts, as trustee under the will of Eliza A. Berry and in his own right, and the said Sarah A. Weller, may be compelled to render a full and perfect account of the estate of James Berry, 2d, which came into their hands, and that they may be charged with the amount of all money paid into the hands of William G. Roberts by the executor of Eliza A. Berry; that the deed from James Berry, 2d, to Eliza A. Berry, be rescinded, canceled, and annulled for fraud; and that Roberts and Mrs. Weller be held as trustees for whatever amount of money or other property belonging to the estate of James Berry, 2d, may have come into their hands through the acts and doings of Eliza A. Berry during her lifetime and under her said will; and that the deed from Roberts and wife and Sarah A. Weller to Thomas J. Emery and John J. Emery be canceled and held for naught; and that the Emerys be required to account for the rents and profits of the lands since the date of the conveyance to them.

The circuit court held that the averments of the bill were not sufficient to show that there was fraud in the mode by which the conveyance of James Berry, 2d, to his mother, was procured; that the inadequacy of the consideration did not clearly appear; nor was it averred that the consideration had not been applied for the benefit of James Berry, 2d. We cannot concur in this view. The bill shows the absolute incapacity of James Berry, 2d, to make a deed, the relationship of dependence between him and his mother, and expressly avers the gross inadequacy of $3,000 as a consideration. It was not necessary that the bill should aver that the money was not paid to him to make a case, but the bill does so aver, and also that it was not paid to any one for his use. The court below said that this did not show that it had not been applied to his use. With deference, we think the two expressions are equivalent. Whether all the averments can be proven is a different question, but, if true, they certainly show such fraud in procuring the deed as to require its cancellation.

The court below held that, until the judgments in the probate court had been set aside, Roberts and Mrs. Weller could not be held accountable for the proceeds of the sale of the land of James Berry, 2d, made thereunder, because those judgments directed payment of the balance, after satisfaction of the debt, to Mrs. Berry. We cannot concur in this view. If the facts occurring prior to the suit in the probate court were such that in equity the proceeds of the sale belonged, not to Eliza A. Berry, but to her son, from whom the property was obtained by fraud, then the representatives and heirs of James Berry, 2d, have the right in equity to follow that money into hands of any one to whom it may have come with the knowledge of the fraud by which it was originally procured. Under the circumstances stated, Mrs. Berry is to be

v.72F.no.4—25

treated merely as a trustee for her son in those probate court proceedings, and the proceeds of sale are as much part of his estate as the land was. More than this, the validity of the probate proceedings is attacked for fraud, and the jurisdiction of a federal court of equity to compel restoration of lands or proceeds fraudulently acquired by such proceedings is clear. Arrowsmith v. Gleason, 129 U. S. 87, 9 Sup. Ct. 237. A federal court of equity, where other necessary jurisdictional facts are present, has the right, without directly setting aside the proceeding in the state court in which the sale is made, to lay its hands upon the guilty parties committing the fraud, and to hold them as trustees, for the defrauded one, to account for the proceeds of the action conceived and carried on in fraud.

The circuit court also held that the cause of action stated in the bill was barred by limitation, resting its conclusion on the failure of the complainant to contest the will of Eliza A. Berry under section 5858 of the Revised Statutes of Ohio. That section provides that a person interested in a will may contest its validity in a civil action in the court of common pleas of the county in which such probate was had. And by section 5866 the action must be brought within two years. The will of Mrs. Berry was probated in 1886, and, as the two years had elapsed before this suit was brought, the circuit court held that the complainant was too late. The complainant does not by his bill seek to set aside the will of Eliza A. Berry. Her will is merely referred to as the conduit through which, as it is charged, William G. Roberts and Sarah A. Weller obtained possession of the proceeds of the real estate of James Berry, 2d, which, in pursuance of the fraudulent scheme of Roberts and Mrs. Berry, had been procured from James Berry, 2d, and conveyed to Eliza A. Berry, without adequate compensation. Neither James Berry, 2d, nor the complainant, had any ground to set aside the will of Eliza A. Berry. They could only follow the proceeds of the fraud against James Berry, 2d, through the various conveyances, whether by deed or will, to the persons in whose hands they found the money or property when the action was brought. By section 4978 of the Revised Statutes of Ohio, the time within which he could bring a suit to set aside his deed of 1882 to his mother did not begin to run against James Berry, 2d, during his life, because he is averred to have been an imbecile and an insane person from 1882, the date of the deed, until his death, in 1891, and to have been under the guardianship of William G. Roberts from 1885 until that time. The statute of limitations of Ohio provides that actions for relief on the ground of fraud shall be brought within four years, but the cause of action shall not be deemed to have accrued until the discovery of the fraud. As the statute did not run during the life of James Berry, 2d, and no right of action accrued to complainant until the death of James Berry, 2d, in 1891, the statute did not begin to run at all till then. This action was begun February 24, 1893, considerably less than four years thereafter.

The court below held that no ground for relief was stated against Mrs. Weller, because there was no averment in the bill charging her with participation in the fraud charged against Roberts or Mrs. Berry, or any knowledge of it. That is true, but she was a mere volunteer, and could not hold property devised to her without any consideration which the testatrix had obtained by fraud. The averments that the Emerys had full notice of the defects in title of Roberts and Mrs. Weller to the property for which they took a deed, are quite broad enough to require that they should also be required to answer the bill.

This case has been considered upon demurrer, and upon demurrer the averments of the bill must be taken as true. What the proof will disclose with respect to the serious charges in the bill is, of course, another matter. They are of a character not to be lightly made against reputable persons. We are clearly of opinion, however, that a sufficient case in equity is stated upon the face of the bill to entitle the complainant, if he proves it, to the relief he seeks, and that the defendants should be required to answer. The decree of the court dismissing the bill is therefore reversed, at the cost of the defendants, with instructions to overrule the demurrer and require the defendants to answer.