OMAHA NAT. BANK OF OMAHA, NEB., v. FEDERAL RESERVE BANK OF KANSAS CITY, MO., et al.

Circuit Court of Appeals, Eighth Circuit.
May 21, 1928.

No. 7992.

1. Courts ☞273, 279—In suit to enforce lien, complaint must show territorial jurisdiction of federal court over subject-matter, and diversity of citizenship between plaintiff and all defendants who are necessary parties (Jud. Code, § 57 [28 USCA § 118]).

In suit under Judicial Code, § 57 (28 USCA § 118), to enforce legal or equitable lien in United States District Court, complaint must show that subject-matter, the res, is within the territorial jurisdiction of the court, and there must be diverse citizenship and residence between plaintiff and all the defendants who are necessary parties.

2. Trusts ☞95—One taking property by fraud is trustee in equity.

Equity regards one who is defrauded of his property as not divested of his equitable right and title, and the wrongdoer is treated as holding the property in trust for the rightful owner.

3. Trusts ☞95, 356(2)—Alleged transaction by which insolvent bank issued drafts and instructed payee to transfer credit to another bank with intent to defraud, known to other bank, made banks trustees.

Alleged transaction by which insolvent bank issued drafts for deposit to credit of drawer in payee bank, and subsequently directed payee bank to transfer part of credit created by the unpaid drafts to Federal Reserve Bank to the credit of third bank, with intent to defraud the payee bank and to prefer the third bank, made the insolvent bank and the third bank, knowing of the facts, trustees of the. money so transferred in favor of the defrauded bank.

4. Trusts ☞356(1)—Transferee taking with knowledge may not hold property fraudulently obtained.

Third party, not participating in fraudulent procurement of funds, may not hold the property as transferee, if he takes with knowledge of the facts.

5. Courts ☞274(6)—Court had jurisdiction of bank's suit to enforce lien on deposit in local branch bank under complaint alleging transfer of credit therein to third bank induced by fraud (Jud. Code, § 57 [28 USCA § 118]; 12 USCA § 91).

Where bank's complaint alleged that nonresident insolvent bank had issued drafts to plaintiff and instructed plaintiff to transfer part of .credit created by the unpaid drafts to credit of a third bank in the Federal Reserve Bank, with fraudulent purpose known to the third bank, also a nonresident, in violation of Rev. St. § 5242 (12 USCA § 91), the credit transferred by the plaintiff under the insolvent bank's instruction was personal property having its situs at the branch of the Federal Reserve Bank to ·which the transfer was made, and federal court of local district had jurisdiction in suit to enforce lien on the ·deposit in the Federal Re-

serve Bank, under Judicial Code, § 57 (28 USCA § 118).

**6. Courts ☞273—Court had jurisdiction of suit by local bank against Kansas City Federal Reserve Bank and nonresident banks and receiver to enforce lien on local deposit (Jud. Code, § 24 (16), and § 57 [28 USCA § 41 (16), and § 118]).**

Complaint by Nebraska bank against Federal Reserve Bank of Kansas City and Wyoming banks and Montana receiver, under Judicial Code, § 57 (28 USCA § 118), to enforce lien on deposit in Omaha Branch of the Federal Reserve Bank, in favor of Wyoming bank, *held* to show diversity of citizenship and residence between plaintiff and all defendants who were necessary parties, bringing case within jurisdiction of federal District Court, under section 24, par. 16 (28 USCA § 41, par. 16).

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by the Omaha National Bank of Omaha, Neb., against the Federal Reserve Bank of Kansas City, Mo., and others. From a decree dismissing the suit, plaintiff appeals. Reversed and remanded.

. Halleck F. Rose, of Omaha, Neb. (Arthur R. Wells and Paul L. Martin, both of Omaha, Neb., on the brief), for appellant.

Edgar M. Morsman, Jr., of Omaha, Neb. (Morsman & Maxwell, of Omaha, Neb., on the brief), for appellee Wyoming Nat. Bank of Casper.

Stout, Rose, Wells & Martin, of Omaha, Neb., for appellee Omaha Nat. Bank of Omaha.

Before LEWIS and KENYON, Circuit Judges, and KENNEDY, District Judge.

LEWIS, Circuit Judge. [1] This suit was brought under section 118, tit. 28, USCA (Judicial Code, § 57), by the Omaha National Bank of Omaha, Nebraska, against Federal Reserve Bank of Kansas City, Missouri, Wyoming National Bank of Casper, Wyoming, First National Bank of Cheyenne, Wyoming, and T. E. McClintock, receiver of the First National Bank of Cheyenne, Wyoming, and was dismissed on the ground that the court was without jurisdiction. That section deals with local actions or suits, and there are two indispensable requirements to give the court jurisdiction: (1) The complaint must show that the subject-matter, the res, is within the territorial jurisdiction of the court, and (2) there must be diverse citizenship and residence between the plaintiff and all defendants who are necessary parties; and it does not matter that plaintiff is or is not a citizen and resident of the State

in which the suit is brought. Its purpose is to enable him to obtain a judgment or decree that will bind the res, though the defendants are all nonresidents and cannot be personally bound unless they enter general appearance or should be served within the district.

That we may have in mind the relevant terms of section 118 we copy here those parts:

"When in any suit commenced in any District Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant· of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. In case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district."

The allegations of the bill of complaint in reference to the property involved, its situs, and the basis of plaintiff's equitable claim thereto are in substance as follows: Plaintiff sues to enforce an equitable title and claim to a credit or funds on deposit in the Omaha Branch at Omaha, Nebraska, of Federal Reserve Bank of Kansas City, Missouri; about July 7, 1924, plaintiff received through the mail from the First National

Bank of Cheyenne two drafts each for the sum of $50,000, drawn by said bank of Cheyenne on the First National Bank of Boston, Mass., for deposit to the credit of the drawer, subject, however, to final payment; thereafter on that day, and after banking hours, plaintiff received a telegraphic dispatch from said bank of Cheyenne requesting that plaintiff transfer the sum of $60,000 from the credit created by said two unpaid drafts to the credit of Wyoming National Bank of Casper in the Federal Reserve Bank of Kansas City, Missouri, Omaha Branch; on the opening of said Federal Reserve Bank, Omaha Branch, on the next day, July 8, 1924, plaintiff pursuant to said telegraphic request caused the sum of $60,000 to be debited by said Federal Reserve Bank to plaintiff's account and a like sum credited in said bank to the said Wyoming National Bank of Casper, and said sum of $60,000 so transferred now stands as a credit on the books of defendant Federal Reserve Bank as a deposit and credit in favor of said Wyoming National Bank and is a charge and debit to the account of plaintiff; previous to and at the time of the delivery by mail of the two drafts for $50,000 each drawn on the First National Bank of Boston and the transmission by telegraph and delivery of said request for the transfer of. $60,000 to the credit of the Wyoming National Bank in the Omaha Branch of the Federal Reserve Bank of Kansas City, a National bank examiner had been and then was engaged in the examination of the affairs of said First National Bank of Cheyenne, and had under the direction of the Comptroller informed the officers and directors of said bank that, said bank was insolvent and had ordered and notified the officers and directors of said Cheyenne bank that it would not be permitted to continue in business and that said bank and all its assets would be taken into the possession of the Comptroller by his agent and a receiver appointed to liquidate said bank unless a large sum of money should be at once contributed and paid into said bank by its stockholders, officers and directors to make good deficiencies of its capital and assets, which facts were unknown to plaintiff; one or more of the officers and directors of the First National Bank of Cheyenne were also stockholders, officers and directors of said Wyoming National Bank of Casper, and at the dates of the transactions aforesaid with plaintiff the First National Bank of Cheyenne was indebted to the Wyoming National Bank of Casper in a sum the particular amount of which is to plaintiff unknown but which plaintiff charges

and alleges exceeded the sum of $60,000; the First National Bank of Cheyenne, with knowledge of its insolvency, and that it was about to be liquidated because thereof, transmitted the said telegraphic dispatch to plaintiff, causing the plaintiff to so transfer said $60,000 to the credit of the Wyoming National Bank out of the credit so obtained on account of said two $50,000 drafts that were then unpaid and in the ordinary course of transportation could not possibly have then been presented to the First National Bank of Boston for payment, in contemplation of immediate liquidation of said First National Bank of Cheyenne and of its insolvency and with a view to preventing the application of its assets in the manner prescribed by the National Banking Act, and with a view to the preference of said Wyoming National Bank over its other creditors, and with the intent to cheat and defraud the plaintiff out of said $60,000 so to be transferred; that said First National Bank of Cheyenne did not at that time have sufficient credit balance with the First National Bank of Boston to pay said two drafts, and by the aforesaid acts and means the said First National Bank of Cheyenne intended to and did cheat and defraud plaintiff in the manner aforesaid out of the sum of $60,000 represented by the transfer so made in the Federal Reserve Bank to the credit of the said Wyoming National Bank of Casper; that said telegraphic order of transfer was made at the instance and upon the request of said Wyoming National Bank with knowledge of the insolvency of said First National Bank of Cheyenne, for the purpose of preventing the application and distribution of the assets of said insolvent National Bank of Cheyenne in accordance with the National Banking Act and of preferring said Wyoming National Bank over other creditors of said First National Bank of Cheyenne; that at the times of the acts complained of George E. Abbott, president of the First National Bank of Cheyenne was also vice-president and director of said Wyoming National Bank of Casper, B. B. Brooks, president of Wyoming National Bank of Casper, was a stockholder of said First National Bank of Cheyenne and was fully informed of said proceedings then being taken by and under the direction of the Comptroller of the Currency; that said Wyoming National Bank had at the opening of business on July 1, 1924, on deposit with the First National Bank of Cheyenne a credit of $273,-478, on account of which and for the purpose of obtaining a preference over other creditors of said First National Bank of Cheyenne,

with knowledge of its insolvency, the said Brooks, in behalf of the Wyoming National Bank had obtained daily transfers of the funds and credits of said Wyoming National Bank with said First National Bank of Cheyenne, including the $60,000 herein complained of, sufficient to reduce its credit balance at the close of business on July 8, 1924, when said First National Bank was permanently closed, to the sum of $12,041.06; that because of the insolvency of said First National Bank of Cheyenne it was closed under orders of the Comptroller and was not permitted to open again or conduct business after banking hours on July 8, 1924, the defendant T. E. McClintock was appointed by the Comptroller as its receiver and as such he has ever since been in possession of its assets; on July 9, 1924, the Comptroller's agent in charge of said First National Bank of Cheyenne notified by wire all depositories on whom drafts had been drawn, including the First National Bank of Boston, of the closing of said bank and ordered that payment be refused on all drafts drawn by it then outstanding and in transit, and said two drafts for $50,000 each were dishonored on presentation to said First National Bank of Boston; plaintiff promptly, upon discovery of the fraud so practiced upon it in requesting and procuring the transfer to the credit of the Wyoming National Bank of said sum of $60,000 in the Omaha Branch bank, notified said Federal Reserve Bank of Kansas City, Mo., at its Omaha Branch on July 11, 1924, of said fraud and disaffirmed, renounced and rescinded said transfer on account of said fraud and because the same was in violation of section 5242, R. S. U. S. (12 USCA § 91), and warned said Federal Reserve Bank that any withdrawals by the Wyoming National Bank of the said credit of $60,000 permitted or honored by it would be at its own risk and peril. Notwithstanding the premises the Federal Reserve Bank threatens to and will unless restrained and enjoined from so doing pay the amount of said credit to the order of said Wyoming National Bank. The writ of injunction was prayed and issued restraining such payments. It was further prayed that upon final hearing the court decree that the transfer of the $60,000 to the credit of the Wyoming National Bank on the books of the Omaha Branch bank and the debiting of the same to the account of the Omaha National Bank on said books be adjudged null and void because of the fraud so practiced on the plaintiff, that said amount be restored to plaintiff's credit in said Branch bank and said Federal Reserve Bank decreed to pay the same to plaintiff and to honor its withdrawal drafts thereon in due course.

[2-4] These allegations charge the two Wyoming National Banks with collusive fraud against the Omaha National Bank—an effort on their part to pay the debt of the Cheyenne bank to the Casper bank with the money of the Omaha National Bank, when both Wyoming banks knew that the Cheyenne bank was insolvent, and the transaction would thus result in loss and damage to the Omaha National Bank. Not only so, but the Act of Congress (section 91, tit. 12, USCA; section 5242, R. S. U. S.) prohibited the Cheyenne bank from paying its debt to the Casper bank after it had committed an act of insolvency or was in contemplation of insolvency, or with a view of giving a preference to its creditor, the Casper bank; and the necessary inference from these allegations is that both Wyoming banks knew that the payment was being made to the Wyoming National Bank in the manner stated in contravention of the statute. If proven as alleged the case would be an obtaining of plaintiff's $60,000 by fraudulent practices. Equity regards one who is defrauded of his property as not divested of his equitable right and title and the wrongdoer as holding in trust for him. On the facts pleaded that relation between the Omaha National Bank and the Wyoming bank of Casper was brought about, we think, by the transference of credit for the $60,000 from the former to the latter in the Omaha Branch bank. 3 Pomeroy's Eq. Jur. (4th Ed.) § 1053. Moreover, a third party not participating in the fraudulent procurement, may not hold the property if he took with knowledge of the facts. 2 Perry on Trusts (5th Ed.) §§ 172, 211.

[5] Impliedly conceding, for sake of argument, all that has been said, it is contended that the facts pleaded show only a paper transaction, which did not create or bring under the court's jurisdiction any personal property within the meaning of section 118, that the section contemplates some specific tangible thing, that here no money passed, no particular fund was created, only book entries were made at plaintiff's direction in the Omaha Branch bank, and there is no res in the State and district of Nebraska which can be adjudged upon and disposed of by the court. It would be hard to convince men who devote their time to business and financial transactions that there is any merit in the contention. As proof to the contrary, and as a matter of common knowledge, the $60,000 will be handed over at the Branch bank's

counter on proper orders to him who is entitled to it. In every practical and business sense the $60,000 is there, and it is a sacrifice of substance to form to say it is not. For remedial purposes on plaintiff's bill we think the situs of any property interest in the transferred deposit was at Omaha. In C. R. I. & P. Ry. Co. v. Sturm, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144, it was held for purposes of levy by garnishment that the situs of a debt was with the debtor. The court said:

"This is a legal necessity, and considerations of situs are somewhat artificial. If not artificial, whatever of substance there is must be with the debtor. He and he only has something in his hands. That something is the res, and gives character to the action as one in the nature of a proceeding in rem. * * * Of course, the debt is the property of the creditor, and because it is, the law seeks to subject it, as it does other property, to the payment of his creditors. If it can be done in any other way than by process against and jurisdiction of his debtor, that way does not occur to us."

The same proposition is learnedly discussed and a like conclusion reached in McBee v. Purcell Nat. Bank, 1 Ind. T. 288, 37 S. W. 55. Corporate shares represent the owner's right to a pro rata interest in corporate assets that may never be parceled among shareholders. The right as property, though intangible, is real, and is personal property within the purpose and meaning of this section. Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 S Ct. 559, 44 L. Ed. 647. It was there said, on the contention that the statute had reference only to tangible personal property: "This would be too narrow an interpretation of the statute." See also Citizens' Sav. & Tr. Co. v. Ill. Cent. R. R. Co., 205 U. S. 46, 27 S. Ct. 425, 51 L. Ed. 703; Franz v. Buder (C. C. A.) 11 F. (2d) 854; Norrie v. Lohman (C. C. A.) 16 F. (2d) 355. In Goodman v. Niblack, 102 U. S. 556, 26 L. Ed. 229, an assignment was made by a debtor of all of his property for the benefit of his creditors. The assignor had a half-interest in a contract which proved to be profitable, and after his death his share was paid to his administrator, Niblack. Goodman, a judgment creditor of the assignor, then sued Niblack, pursuant to the terms of this section as it stood prior to the amendment of March 3, 1875, seeking to follow the money paid to Niblack as a trust fund out of which his judgment should be satisfied. In holding that the suit was maintainable Mr. Justice Miller, speaking for the court, said of this section:

"This is a proceeding in equity to enforce a lien on the fund which is within reach of the court, and as the trustees and complainant have the requisite citizenship, section 738 of the Revised Statutes [28 USCA § 118] provides a remedy for inability to serve process by an order of publication. If they appear, the suit will proceed as usual. If they do not appear, the decree, so far as it affects the fund in the hands of Niblack, will bind them; and this is all that is necessary to give the court jurisdiction to grant the relief prayed for by the complainant."

In Pennington v. Fourth National Bank of Cincinnati, 243 U. S. 269, 37 S. Ct. 282, 61 L. Ed. 713, L. R. A. 1917F, 1159, it appeared that Pennington was sued by his wife for divorce. He was a nonresident and had a deposit in the Fourth National Bank within the jurisdiction of the State court. In the divorce suit his wife obtained an injunction against the bank restraining it from paying the funds on deposit to Pennington, and later, under the court's order, it was paid to her on her allowance of alimony. Thereafter the bank, having refused to honor Pennington's checks, he sued it for the amount of the deposit. In sustaining the judgment denying recovery the court said:

"The Fourteenth Amendment did not, in guaranteeing due process of law, abridge the jurisdiction which a State possessed over property within its borders, regardless of the residence or presence of the owner. That jurisdiction extends alike to tangible and to intangible property. Indebtedness due from a resident to a nonresident—of which bank deposits are an example—is property within the State."

In Bank of Jasper v. First National Bank, 258 U. S. 112, 42 S. Ct. 202, 66 L. Ed. 490, the court again commented on the power of a State court over property within its jurisdiction in local actions. It was claimed that a nonresident defendant who had been notified only by substituted service had a deposit in a bank within the jurisdiction of the State court and that court had adjudicated ownership of the deposit. It was found, however, that there was no such deposit. In commenting on that fact the court said (page 119 [42 S. Ct. 204]):

"That indebtedness, if it had rested in open account, would have been property of the creditor within the State of Florida. In an appropriate proceeding it might have been reached to satisfy a claim against its owner. Pennington v. Fourth National Bank, 243 U. S. 269 [37 S. Ct. 282, 61 L. Ed. 713, L. R. A. 1917F, 1159]. But the suits in the State court were not proceedings of that character."

Funds raised by taxation, to which conflicting claims are made, are personal property within the meaning of this section. Continental Tr. Co. v. Shunk Plow Co. et. al. (C. C. A.) 263 F. 873; Id. (C. C. A.) 295 F. 615. Accepting the allegations as stating the true facts, we think the $60,000 transferred to the credit of Wyoming National Bank in the Omaha Branch bank was personal property within the court's jurisdiction, to which plaintiff asserted an equitable claim and title, and in that respect the suit was one properly brought under section 118.

[6] The complaint alleges diverse citizenship between plaintiff and the two Wyoming National Banks, basing the allegation on section 41, paragraph 16, tit. 28 USCA, which declares that National banks, for jurisdictional purposes, shall be "deemed citizens of the States in which they are respectively located." It alleges that defendant McClintock, receiver, was a citizen and resident of the State of Montana. It alleges that Federal Reserve Bank of Kansas City, Mo., was a corporation organized and existing under the Act of Congress known as the Federal Reserve Act, having its principal place of business at Kansas City, Mo.; that it operated the Omaha Branch bank through a board of directors and a manager under rules and regulations approved by the Federal Reserve Board. All defendants were served with notice of the suit at their places of business outside the District of Nebraska, as section 118 provides may be done. McClintock entered general appearance and filed an answer and counterclaim. Federal Reserve Bank of Kansas City entered special appearance, "for the sole purpose of objecting to the jurisdiction of this court to compel this defendant to appear and answer, because this defendant was served out of the district of which it is an inhabitant, and because this defendant is not a resident, citizen or inhabitant of the District of Nebraska in which this suit is brought." It then filed its motion to dismiss, stating as ground therefor that it "is not a citizen or inhabitant of nor does it reside in, nor is it found in, the District of Nebraska, but that it is an inhabitant of and resides in the City of Kansas City, in the County of Jackson, which is in the Western District of Missouri, and that the United States District Court of the Western District of Missouri is the District Court of the United States which may have jurisdiction of suits against this defendant and

26 F.(2d)—56½

is the proper venue of the same, and not the United States District Court for the District of Nebraska in which this suit is brought." The First National Bank of Cheyenne, Wyoming, did not appear, except through its receiver McClintock. The Wyoming National Bank of Casper filed its objections to the court's jurisdiction, alleging that it was a citizen and resident of the State of Wyoming and without the jurisdiction of the court, "That the cause of action set forth in plaintiff's petition is not a suit to enforce any legal or equitable lien upon or claim to or to remove any encumbrance or lien or cloud from the title to real or personal property located or found within the jurisdiction of this court, nor a suit within the jurisdiction of this court, nor a suit within the meaning of section 57 of the Federal Judicial Code." These motions to dismiss were overruled. The Federal Reserve Bank and the Wyoming National Bank then filed answers reserving their objections to the court's jurisdiction and alleging therein the substance of the objections set up in their motions to dismiss. The court later reconsidered its ruling on the question of jurisdiction and sustained the motion of Wyoming National Bank of Casper to dismiss, on the ground that the court was without jurisdiction. We leave without comment the question whether the Wyoming National Bank did not enter its general appearance in paragraph II of its amended answer which reads: "That plaintiff's bill of complaint fails to state facts sufficient to constitute a cause of action against this defendant in that the pretended cause of action therein set forth constitutes an action at law for fraud; that this defendant is solvent and able to respond to any judgment which plaintiff can obtain against this defendant in a court of competent jurisdiction and plaintiff has an adequate remedy at law." That question was not ruled upon by the court below, nor briefed or argued, and we pass it without present consideration.

We think the pleadings clearly show diverse citizenship between the plaintiff and all defendants. In respect to parties also the bill stated a case within the requirements of section 118. Stockyards National Bank v. Bragg et al. (C. C. A.) 293 F. 879.

The court erred in its order of dismissal. The plaintiff is entitled to have that order vacated and to proceed with the trial of its suit, as it may be advised.

Reversed and remanded.