## McMURRAY v. CHASE NAT. BANK OF CITY OF NEW YORK.

No. 2414.

District Court, D. Wyoming.

May 6, 1935.

Walter W. Hoye, of Los Angeles, Cal., and Joseph R. Sullivan, of Laramie, Wyo., for plaintiff.

N. E. Corthell, of Laramie, Wyo., for respondent.

KENNEDY, District Judge.

The plaintiff has filed this suit for equitable relief, and the bill of complaint is challenged with a motion to dismiss, which is the matter now before the court. The bill alleges that the plaintiff is a citizen and resident of the state of California, and that the respondent is a national banking corporation organized under the laws of the United States, with its principal place of business in the city of New York and within the Southern judicial district of the state of New York; that the amount involved in the controversy is in excess of $3,000, and the value of the property claimed by the plaintiff is $350,000; that the jurisdiction of the court is based upon 28 USCA § 118 (section 57, Judicial Code), in that the plaintiff claims an undivided one-half of the beneficial interest in the income, rents, royalties, and earnings from certain oil and gas leasehold estates and working agreements covering real property situated in the judicial district of Wyoming and located in the counties of Albany and Carbon in said state, which said properties are operated by the Ohio Oil Company and which income, royalties, and earnings derived from said property are paid over to the respondent as trustee under the terms of agreements formerly made between said Ohio Oil Company and the respondent's predecessor in interest, one Klingerman; that plaintiff claims a present contingent title in said leasehold estates in the event of plaintiff living until August 10, 1937, amounting to an undivided one-half interest; that the legal descriptions of the property are attached to and made a part of the bill; that the plaintiff is the mother of one Donald McMurray, now deceased, and that one Aimee Christine McMurray is the widow of said Donald McMurray, they having been united in marriage in July, 1932; that Aimee Christine McMurray is the stepdaughter of one Myron Reynolds and prior to her marriage resided with Reynolds and his wife, the mother of Aimee; that on August 10, 1927, Donald McMurray executed an indenture of trust conveying to said Klingerman as trustee certain property in trust for the benefit of himself and the plaintiff and any widow which Donald McMurray might leave surviving him, together with certain other contingent beneficiaries, a copy of the indenture of trust being attached and made a part of the bill; that the corpus of that trust includes the identical property and assets which the respondent trustee now holds under a trust agreement dated May 26, 1933; that on the 16th day of May, 1928, McMurray executed a supplemental trust agreement which carried substantially the same provisions of the first trust agreement and extended the time of such trust agreement until August 10, 1937, or until the death of McMurray, should he die prior to the expiration of the trust leaving surviving him the plaintiff and a widow, and then and in that event said trust should not terminate on the death of McMurray but should be kept in force and effect until August 10, 1937, upon which date it should be divided equally between plaintiff and the surviving widow and in the meantime the plaintiff and widow should receive equal portions of the income from the trust estate; that after the marriage of McMurray the stepfather of Aimee, armed with a power of attorney from Donald McMurray, came to Los Angeles and approached the plaintiff, exhibiting to her the power of attorney and represented that it was desirable to terminate the old trust agreement with Klingerman as trustee because of his inefficiency and incompetency and the fee which he was receiving being exorbitant; that Reynolds requested plaintiff to join with him in securing the removal of Klingerman as trustee and if this were done a new trust would be set up with another trustee, but with the same provisions as to the rights of plaintiff being preserved thereunder; that relying upon the promises of said Reynolds and having faith in the integrity and good intentions of her son Donald McMurray, plaintiff co-operated in securing the removal of Klingerman as trustee, which was accomplished through a court proceeding including the resignation of

Klingerman and a reconveyance of the property in the trust agreement to Donald McMurray;* that the court proceeding was in the superior court of the state of California in and for the county of Los Angeles; that in said proceeding the plaintiff filed an answer which in effect consented to the termination of the trust by that court; that plaintiff retained no attorneys for her protection in the premises, but that such attorneys who did appear were employed by and acted solely in the interest of Reynolds, Donald McMurray, and Aimee; that after the entry of the decree said Klingerman as trustee delivered instruments of conveyance of the trust estate to Donald McMurray and delivered all papers in connection therewith to Reynolds; that Reynolds thereupon returned to New York and on May 26, 1933, and in conjunction with Donald McMurray caused another trust agreement to be made in which the respondent herein was named as the trustee, a copy of which instrument is attached to the bill; that said latter instrument was executed by Donald McMurray in the city of Paris, and that since the execution of said instrument the respondent has had possession of the corpus of the trust estate as trustee and is managing the same under the terms' of said trust agreement; that the plaintiff did not become aware of the execution of the new trust agreement until some three months after the death of said Donald McMurray in February, 1934; that the terms of the new trust agreement are substantially different than the original trust agreement and the supplement thereto, in that the whole beneficial interest of the trust estate passed thereunder on the death of Donald McMurray to Aimee, his widow, and that the promises of the said Reynolds in connection with the re-establishment of the trust with the new trustee were not kept, in that the provisions of the new trust are wholly different; that Aimee has accepted all the benefits under the new trust by virtue of the fraud which had been practiced upon the plaintiff; that the intention of Reynolds acting under the power of attorney from Donald McMurray and of the said Donald McMurray were to induce the plaintiff to consent to a change in the trust agreement under the false and fraudulent representations set forth; that the plaintiff received no consideration for giving her consent to the termination of the original trust; that plaintiff received $1,800 paid over to her by the respondent and that respondent paid more than $1,000 on account of a life insurance policy insuring the life of Donald McMurray in which plaintiff was named as beneficiary, all of which was received and accepted by the plaintiff without any knowledge on her part that there had been a change in the trust agreement in relation to her beneficial interest; that the plaintiff is ready and willing to do what the court deems equitable in the premises regarding anything of value which she has received under the trust agreement; that she is entitled under said original trust agreement to receive certain sums which are specifically set forth in the bill; and that plaintiff is without an adequate remedy at law. Plaintiff seeks a decree entitling her to have the trust property in the hands of the respondent impressed with a constructive trust for her use and benefit in accordance with the terms of the original trust agreement and the supplement thereto, together with an accounting from the respondent, the naming of a new trustee by the court, and other equitable relief.

Upon the filing of the bill of complaint a warning order was taken out under section 118, supra, and duly served upon the respondent in the Southern district of New York. Before the appearance date the respondent interposed a motion for enlargement of time for defense until January 10, 1934, in which liberty to object to the jurisdiction of the court was expressly reserved. The motion was supported by affidavit of counsel, and the time was by order enlarged up to and including January 10, 1934. On the latter date the respondent, appearing specially for the sole purpose of objecting to the jurisdiction of the court, filed a motion to dismiss upon the grounds, in substance: (1) That the court has no jurisdiction of the subject of the suit; (2) that the court has no jurisdiction of the person of the respondent; (3) that the suit is not brought in the district of the residence of either the plaintiff or defendant; (4) that the legal representatives of the estate of Donald McMurray are indispensable parties; (5) that Aimee Christine McMurray is an indispensable party; and (6) that persons who are legal heirs under the laws of the state of California are indispensable parties.

It is claimed by the plaintiff that the respondent in the foregoing circumstances has entered a general appearance, and that therefore in so far as any objection to jurisdiction over the person of the defendant, there is a waiver. The general rule as to special appearances is expressed in the syllabus in Big Vein Coal Co. v. Read, 229 U. S. 31, 33 S. Ct. 694, 57 L. Ed. 1053, in the following language: "In the Federal courts an appearance may be made for the sole purpose of raising jurisdictional questions without thereby submitting to the jurisdiction of the court over the action; and where, as in this case, no issue involving the merits was made, a special appearance to object to the jurisdiction does not give the court jurisdiction to issue an attachment."

It will be noted that in the motion for enlargement of time the respondent specifically reserved the right to object to the jurisdiction of the court, and in the motion to dismiss the special appearance in objecting to the court's jurisdiction is fully carried out. Every paragraph of the motion to dismiss presents an objection to the court's jurisdiction, and there is no portion of the motion which challenges the sufficiency of the bill. While there are some cases which may seem to hold that the action of the respondent in securing an enlargement of the time within which to plead constitutes a general appearance, I am satisfied that this is not the true rule, or at least not the better rule. The doctrine seems to be fully expounded in the case of Pine Hill Coal Co. v. Gusicki (C. C. A.) 261 F. 974, where the court at page 977 speaks as follows:

"It is argued by learned counsel for the defendant in error, that by securing the extension of time to 'demur, answer, or otherwise act upon the summons and complaint,' there was a general appearance, and that the plaintiff in error could not therefore, object to the jurisdiction of its person, and providing the court had jurisdiction of the subject-matter of the action, defendant in error is entitled to succeed. From the outset of the litigation, the plaintiff in error made plain its objection to the jurisdiction of the court, and it did not convert its special appearance into a general one. It did not appear and plead to the merits by obtaining the extension of time. It appeared specially, and was entitled to at any time challenge the jurisdiction of the court on the ground that the suit had been brought in the wrong district, as well as the jurisdiction of the court to the person of the plaintiff in error or to the subject-matter.

"The use of the phrase that it appeared specially for the purpose of setting aside the service of the summons, and at the same time, in the order to show cause extending its time to 'appear, demur, or answer, or otherwise act upon the summons and complaint,' prevents it from being considered a general appearance. It is only where the plaintiff in error pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived. Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237; Yanuszauckas v. Mallory S. S. Co., 232 F. 132, 146 C. C. A. 324."

The disposition of this point leaves for full determination the question of the court's jurisdiction. Various complex and interlocking features as to why the court has or has not jurisdiction are presented in the arguments and trial briefs of counsel. It is no particular confession of weakness on the part of the court to say that the questions presented are not easily determined.

Is the case presented by the bill one which falls within the scope and range of section 118, supra? This section reads as follows: "When in any suit commenced in any district court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. In case such absent defendant shall not

appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district; and when a part of the said real or personal property against which such proceedings shall be taken shall be within another district, but within the same State, such suit may be brought in either district in said State. Any defendant or defendants not actually personally notified as above provided may, at any time within one year after final judgment in any suit mentioned in this section, enter his appearance in said suit in said district court, and thereupon the said court shall make an order setting aside the judgment therein and permitting said defendant or defendants to plead therein on payment by him or them of such costs as the court shall deem just; and thereupon said suit shall be proceeded with to final judgment according to law."

The federal courts have been very active in their attempt to differentiate the cases which may or may not come within its contemplation. In Omaha National Bank v. Federal Reserve Bank, 26 F.(2d) 884 (C. C. A. 8), this section was under consideration, and Judge Lewis (now the senior judge of our own circuit) reviewed many of the cases arising under it, from the Supreme and lower courts. In speaking of the purpose and intent of the statute, 26 F.(2d) 884, at page 885 of the opinion, this learned jurist says: "That section deals with local actions or suits, and there are two indispensable requirements to give the court jurisdiction: (1) The complaint must show that the subject-matter, the res, is within the territorial jurisdiction of the court, and (2) there must be diverse citizenship and residence between the plaintiff and all defendants who are necessary parties; and

it does not matter that plaintiff is or is not a citizen and resident of the State in which the suit is brought. Its purpose is to enable him to obtain a judgment or decree that will bind the res, though the defendants are all nonresidents and cannot be personally bound unless they enter general appearance or should be served within the district."

In that case the availability of the statute to cover a credit in a bank was considered and the jurisdiction of the court under the section was sustained. In the case at bar, the res purports to be income, rents, royalties, and earnings accruing from leasehold property located in this district, together with a future permanent title ownership. It would make no difference under the terms of the statute whether the property is in its nature real or personal, provided the suit was for the purpose of enforcing a legal or equitable lien or to remove any encumbrance, lien, or cloud upon the title of such property. It would seem that the right of the plaintiff to enforce her claim in the suit at bar attaches to property which has its situs in this judicial district. The diversity of citizenship condition is also satisfied, in that the parties, plaintiff and defendant, are residents of different judicial districts, although neither is a resident of the district in which the suit is brought. See, also, Greeley v. Lowe, 155 U. S. 58, 15 S. Ct. 24, 39 L. Ed. 69; Citizens' Savings & Trust Co. v. Illinois Central R. Co., 205 U. S. 46, 27 S. Ct. 425, 51 L. Ed. 703. Should there be no other disqualifying elements appearing in the case, by this reasoning it should follow that the suit is properly filed under section 118.

The next important query is as to whether or not there is an absence of indispensable parties. As suggested by the motion to dismiss, these are comprised of the chief beneficiary under the new trust, Aimee Christine McMurray, the legal representatives of the estate of McMurray, and contingent collateral heirs residing in California. If these or any of them appear to be indispensable parties, the jurisdiction of this court is at an end, for the reason that their citizenship and residence is of the same state with that of the plaintiff, and therefore could not be brought in by constructive service without destroying that jurisdiction. (While the residence of

Aimee Christine McMurray is not stated in the bill, it is admitted in the brief of plaintiff that she is a resident of California.) Inasmuch as it would appear that the legal representatives of the McMurray estate and his collateral heirs have only a contingent interest in the outcome of the controversy, the consideration of Aimee Christine McMurray, the chief beneficiary under the trust, is of greater significance. It would be difficult to assume that under the circumstances if she were determined not to be an indispensable party by what process of reasoning the legal representatives of the estate and collateral heirs, having no direct interest at present in the trust property, might be considered as indispensable parties.

The question of Aimee being classed as indispensable to the proper determination of the controversy is not free from doubt. Some of the cases cited and relied upon by respondent would seem to carry the suggestion that the beneficiaries under the trust in a suit affecting it are necessary and indispensable parties, and in fact it should be admitted that this would seem to be the general rule. Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 13 S. Ct. 691, 37 L. Ed. 577; Minnesota v. Northern Securities Co., 184 U. S. 199, 22 S. Ct. 308, 46 L. Ed. 499; and Franz v. Buder, 11 F.(2d) 854 (C. C. A. 8) (opinion by Judge Phillips now of the 10th Circuit), are samples of this class of cases. The latter case was one involving a trust in which it was held that all of the beneficiaries under the trust should be held to be indispensable parties, and that the trustee as a representative of the cestuis que trust could not well be representing one as against another. The language of the court is found in 11 F.(2d) 854, at page 857, as follows: "Counsel for plaintiff say that, if such persons were indispensable parties, then that they sufficiently appeared by representation through G. A. Buder as trustee. A sufficient answer to this contention is that the conflict here is between the several beneficiaries under the trust agreement, and that Buder, as trustee, cannot appear in his representative capacity in favor of some of the beneficiaries, and against the others, when his duty is to all."

The soundness of this doctrine is at once apparent, but it may not be applicable in principle on the facts presented by the bill in the case at bar. It is apparent from plaintiff's pleading that instead of attempting to recover as a beneficiary under the last trust indenture, her effort is in the nature of an outside attack upon such trust on account of fraud occurring prior to the establishment of such trust and to impress her interests upon the trust property in the hands of the trustee. Cases have been cited by plaintiff which seem to make this situation one of the exceptions to the ordinary rule. This is discussed by Mr. Justice Harlan in Vetterlein v. Barnes, 124 U. S. 169, and at pages 171, 172 and 173, 8 S. Ct. 441, 442, 31 L. Ed. 400, the following language appears:

"3. It is contended that the wife and children of Theodore H. Vetterlein were indispensable parties, and that it was error to proceed to a final decree without having them made defendants. The general rule, undoubtedly, is that all persons materially interested in the result of a suit ought to be made parties, so that the court may 'finally determine the entire controversy, and do complete justice by adjudging all the rights involved in it.' Story v. Livingston, 13 Pet. 359, 375 [10 L. Ed. 200]; Shields v. Barrow, 17 How. 130, 139 [15 L. Ed. 158]. But in a suit brought against a trustee by a stranger, for the purpose of defeating the trust altogether, the beneficiaries are not necessary parties, if the trustee has such powers, or is under such obligations, with respect to the execution of the trust, that 'those for whom he holds will be bound by what is done against him, as well as by what is done by him.' In such cases of representation by trustees, the beneficiaries will be bound by the judgment, 'unless it is impeached for fraud or collusion between him and the adverse party.' Kerrison v. Stewart, 93 U. S. 155, 160 [23 L. Ed. 843].

"In Sears v. Hardy, 120 Mass. [524] 529, the court, after observing that who shall be made parties to a suit in equity cannot always be determined by definite rules, but rests to some degree in the discretion of the court, said: 'Generally speaking, however, to a suit against trustees to enforce the execution of a trust, cestuis que trust, claiming present interests directly opposed to those of the plaintiff, should be made parties, in order that

they may have the opportunity themselves to defend their rights, and not be obliged to rely upon the defense made by the trustees, or to resort to a subsequent suit against the trustees or the plaintiff, or to take the risk of being bound by a decree rendered in their absence.' But the rule is different where the claim of the plaintiff antedates the creation of the trust, and the suit is brought, not in recognition or furtherance of the trust, but in hostility to it, as fraudulent and void. In Rogers v. Rogers, 3 Paige [N. Y.] 379—which was a suit by a judgment creditor to set aside as fraudulent an assignment by the debtor of his personal estate in trust for the payment of a debt to a particular bank, and to pay the residue of the proceeds thereof to other creditors of the assignor—it was objected, at the hearing, that the bank was not made a party defendant. The objection was held to be untenable, the chancellor observing: 'As a general rule, the cestui que trust, as well as the trustee, must be parties, especially where the object is to enforce a claim consistent with the validity of the trust. But where the complainant claims in opposition to the assignment or deed of trust, and seeks to set aside the same, on the ground that it is fraudulent and void, he is at liberty to proceed against the fraudulent assignee or trustee, who is the holder of the legal estate in the property, without joining the cestui que trust.' Wakeman v. Grover, 4 Paige [N. Y.] [23] 33; Irwin v. Keen, 3 Whart. [Pa.] [347] 354, 355; Therasson v. Hickok, 37 Vt. 454; Hunt v. Weiner, 39 Ark. [70] 76; Winslow v. Minnesota & Pacific Railroad Co., 4 Minn. [313] 316 (Gil. 230), 77 Am. Dec. 519; Tucker v. Zimmerman, 61 Ga. [599] 601.

"The assignment of the policies in question in trust for the wife and children of the assignor—the trust having been accepted—carried with it, by necessary implication, authority in the trustees, by suit or otherwise, to collect the insurance moneys for the beneficiaries. Indeed, they could not otherwise have fully discharged the obligations they assumed as trustees. They were entitled to represent the beneficiaries in their claim for the insurance money, and were under a duty to defend any suit, the object of which was to prevent the discharge of that duty, and set aside the transfer of the policies as fraudulent and void. It results that the wife and children of Theodore H. Vetterlein were not necessary parties defendant."

In the later case of Manson v. Duncanson, 166 U. S. 533, 17 S. Ct. 647, 41 L. Ed. 1105, the court apparently adheres to the same doctrine, as shown by the language used at page 543 of 166 U. S., 17 S. Ct. 647, 651: "In the case of Kerrison, Assignee, v. Stewart, 93 U. S. 155 [23 L. Ed. 843], the question was whether the creditors of an insolvent firm, in whose favor a deed of trust had been executed by the firm, were bound by a decree against the trustee; and this court held that: 'where a trustee is invested with such powers that his beneficiaries are bound by what is done against him or by him, they are not necessary parties to a suit against him by a stranger to defeat the trust in whole or in part. In such case, he is in court on their behalf, and they, though not parties, are concluded by the decree, unless it is impeached for fraud or collusion between him and the adverse party.' "

An examination of the trust agreement which is attacked in the suit would seem to disclose that the respondent as trustee is fully charged with complete administration and power over the trust property. The plaintiff, claiming no benefits under it, is attacking it in the capacity of a stranger, rather than as a party to it. It is also clear that her claim purports to antedate its institution. The respondent would seem to be classified as a volunteer, and, on account of holding the property through fraud perpetrated by others, is to be said to be in the position of a trustee ex maleficio. In Moore v. Crawford, 130 U. S. 122, at page 129, 9 S. Ct. 447, 449, 32 L. Ed. 878, is the following language: "The fraud of which Moore was guilty was in preventing the conveyance to himself, which would have inured to Monroe, and in obtaining it to his wife, so as to reap the benefit which belonged to his grantee. Mrs. Moore stands in her husband's shoes, and, by accepting with knowledge, is to be treated as a party to his fraud and profiting by it, or, as a mere volunteer, assisting him to perpetrate the fraud and to profit by it, and is hence to be held, as he could have been, a trustee ex maleficio."

In another portion of the same opinion, 130 U. S. 122, at page 128, 9 S. Ct. 447, 448, 32 L. Ed. 878, the court expresses itself as follows: "Whenever the legal title to property is obtained through means or under circumstances 'which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust.' 2 Pom. Eq. Jur. § 1053."

■ Under the foregoing authorities, it seems impossible to avoid the conclusion that all the elements in the suit at bar are present, requiring the determination that the respondent as trustee is truly representative of the beneficiaries under the trust which is being attacked whose duty it is to defend the rights of such beneficiaries, and that they as such are not indispensable parties.

■ Another question presented is as to whether or not the present suit is a collateral attack upon the judgment and decree of the California superior court, and for such reason not maintainable here. It is undoubtedly the rule that a collateral attack may not be made to accomplish a setting aside or a modification of the decree of another court of competent jurisdiction. This rule is announced by decisions of our own circuit. Folk v. Monsell, 71 F.(2d) 816 (C. C. A. 10), and United States v. Mashunkashey, 72 F.(2d) 847 (C. C. A. 10). But even in these cases it is said that a court of competent jurisdiction has authority to deprive a party of the benefits of a decree obtained in a state court through fraud. One of the cases relied upon by the plaintiff is Rhino v. Emery (C. C. A.) 72 F. 382, opinion by Judge Taft (later Chief Justice). This language appears in the opinion, 72 F. 382, at page 386: "More than this, the validity of the probate proceedings is attacked for fraud, and the jurisdiction of a federal court of equity to compel restoration of lands or proceeds fraudulently acquired by such proceedings is clear. Arrowsmith v. Gleason, 129 U. S. [86] 87, 9 S. Ct. 237 [32 L. Ed. 630]. A federal court of equity, where other necessary jurisdictional facts are present, has the right, without directly setting aside the proceeding in the state court in which the sale is made, to lay its hands upon the guilty parties committing the fraud, and to hold them as trustees, for the defrauded one, to account for the proceeds of the action conceived and carried on in fraud."

The principal bulwark of plaintiff's theory is Arrowsmith v. Gleason, 129 U. S. 86, at page 98, 9 S. Ct. 237, 240, 32 L. Ed. 630, where the court says: "But it is insisted that the circuit court of the United States sitting in Ohio is without jurisdiction to make such a decree as is specifically prayed for, namely, a decree setting aside and vacating the orders of the probate court of Defiance county. If by this is meant only that the circuit court cannot by its orders act directly upon the probate court, or that the circuit court cannot compel or require the probate court to set aside or vacate its own orders, the position of the defendants could not be disputed. But it does not follow that the right of Harmening in his lifetime, or of his heirs since his death, to hold these lands, as against the plaintiff, cannot be questioned in a court of general equitable jurisdiction upon the ground of fraud. If the case made by the bill is clearly established by proof, it may be assumed that some state court of superior jurisdiction and equity powers, and having before it all the parties interested, might afford the plaintiff relief of a substantial character. But whether that be so or not, it is difficult to perceive why the circuit court is not bound to give relief according to the recognized rules of equity, as administered in the courts of the United States; the plaintiff being a citizen of Nevada, the defendants citizens of Ohio, and the value of the matter in dispute, exclusive of interest and costs, being in excess of the amount required for the original jurisdiction of such courts."

■ In the light of these decisions and an analysis of plaintiff's bill, it would seem that this suit is not in its nature

968

an attempt to attack collaterally the decree of another court, but is an effort on the part of the plaintiff to lay hold of property out of which she claims to have been defrauded, as found in the hands of one who is not an innocent purchaser for value. The contention of the respondent in this respect must therefore be resolved against it.

Other incidental features are suggested by the arguments and briefs. The trust agreement shows that property other than the leasehold interests are included in the trust. Of these of course the court would have no jurisdiction under section 118, but this cannot defeat the rights of the plaintiff to assert her claim to such property as is found to be within the court's jurisdiction. As to such other property the plaintiff by this suit may be held to have forfeited her claim; but with this phase of the situation we are not here concerned.

There is an intimation that the plaintiff might properly sue the beneficiary in the state courts of California, where all principal parties reside. The suit being based upon fraud, and Aimee Christine McMurray not having been charged with any fraud, it would scarcely be feasible to maintain a suit against her upon that ground and secure adequate relief; the trust property not being in her possession or under her control. Doubtless the doctrine is that a suit to establish or enforce a trust is usually considered of a transitory nature where the charge of fraud is sought to be maintained, but where other requisite elements are present, such a suit may likewise be maintained under section 118. Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647. In that case a board of directors were charged with fraudulent acts affecting the rights of certain stockholders.

Viewing the case as a whole, the path of the jurist seems to be hedged about with pitfalls and into one or more of which he may have unwittingly fallen. That must be determined, however, by a higher court.

The conclusion is, that the motion to dismiss for lack of jurisdiction will be overruled, reserving proper exceptions to the respondent, and an order may be entered accordingly as of the date of this memorandum, allowing the respondent 30 days within which to answer or otherwise plead.